[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13685

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 04-20778-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENT FRANK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 15, 2010)

Before MARCUS and WILSON, Circuit Judges, and RESTANI,* Judge:

WILSON, Circuit Judge:

_____

* Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade,
sitting by designation.

Kent Frank was convicted of traveling and engaging in illicit sexual conduct with three minor girls in Cambodia, of traveling with the intent to engage in illicit sexual conduct, and of purchasing the girls in order to produce sexually explicit visual depictions of them, in violation of 18 U.S.C. §§ 2423(b),(c) and 2251A(b)(2)(A).  On appeal, Frank raises the following issues: (1) whether the district court correctly denied his motion to suppress un-*Mirandized* statements obtained by foreign officials in Cambodia; (2) whether 18 U.S.C. § 2251A applies extraterritorially; (3) whether the district court correctly denied his motion for judgment of acquittal as to the sufficiency of evidence for "purchase" under 18 U.S.C. § 2251A(b) and "illicit sexual conduct" under 18 U.S.C. § 2423(c); (4) whether the district court erred in instructing the jury as to the definition of "purchase" under 18 U.S.C. § 2251A(b) and "sexual act" under 18 U.S.C. § 2423(b); (5) whether there was reversible error in the prosecutor's opening and closing statements; (6) whether the district court plainly erred in imposing concurrent 360-month sentences for Counts 2, 4, and 5; (7) whether the district court violated Federal Rule of Criminal Procedure 30 in giving supplemental jury instructions at the defense's request; and (8) whether Frank's confession was properly admitted.  After thorough review of the briefs and the record, and with the benefit of oral argument, we affirm Frank's convictions.

2

## I. BACKGROUND

In January 2004, Frank, a United States citizen and resident, was detained in Cambodia by the Cambodian National Police ("CNP") based on a tip that Deputy Chief Keo Thea[1] of the CNP Anti-Human Trafficking and Juvenile Protection Office received concerning unusual activities in Frank's room at the Golden Bridge Hotel. Four girls exited the hotel, and Keo detained them for questioning.[2] Keo suspected that the girls were between fourteen to seventeen years old from their appearance and stated astrological signs. Based upon the information he learned from the girls, Keo went to Frank's hotel room, searched it, and seized various items.[3]

Keo then took Frank to the Cambodian police station, suspecting him of violating Cambodian laws. That night, Frank was not placed in a jail cell but was permitted to sleep on a cot in Keo's office. The next morning, Seng Leena, an interpreter, was brought in, and Frank was interviewed. Frank admitted that he had

---

[1] Cambodian names in this opinion are given in the following order: the first name is the surname, and the second is the individual's given name. Therefore, we will refer to Keo Thea as Keo, his surname.

[2] Although the names of the girls were used during the trial, we will refer to them individually as Minors A, B, C, and D, as seen in the indictment.

[3] Items that were found include a digital camera, a laptop, microdrives, pornographic DVDs, HIV/AIDS test kits, various lubricants, condoms, Viagra medication, an address book containing a listing for a *mamasan* (prostitute broker), an address of a brothel, children's video games (including one entitled "Little Mermaid II: Pinball"), Miracle Bubbles, and female children's clothing including "Looney Tunes" and "Powerpuff Girls" tops, underwear, and stockings.

engaged in sexual conduct with and had taken sexually explicit photographs of Minors A, B, C, and D on multiple occasions. He confessed to paying the girls $15 or $25 to either photograph them or have sex with them.

At some point during the interview, Gary Phillips, the Assistant United States Immigration and Customs Enforcement Attaché in Bangkok, Thailand, arrived to meet with Chief Meng Say of the CNP, but did not participate in Frank's interview. In a separate room, Agent Phillips reviewed the evidence Cambodian officials had seized from Frank's hotel room. The day after Frank's interrogation by Cambodian officials, Agent Phillips attempted to interrogate Frank after providing him *Miranda* warnings, but was interrupted when Cambodian officials arrived to bring Frank before a Cambodian judge to face charges against him. Without notifying Agent Phillips, Cambodian officials released Frank after resolution of these charges. Frank then traveled to Vietnam, where he was arrested by United States officials.

In 2005, Frank was charged with traveling in foreign commerce and engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(c) (Counts 1–5); purchasing or otherwise obtaining custody or control of a minor with the intent to promote the engaging in of sexually explicit conduct by the minor for the purpose of producing any visual depiction of such conduct, in violation of 18

4

U.S.C. § 2251A(b)(2)(A) (Counts 6–9); and traveling in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b) (Count 10).[4]

At trial, the government introduced evidence that during two trips in late 2003, Frank paid the minor girls listed in the indictment to engage in sexual acts with Frank and to take sexually explicit pictures of him. From the first trip, 506 photographs were retrieved, of which 322 were not deleted. From the second trip, which culminated in Frank's arrest by Cambodian officials, law enforcement found 1,134 pictures, of which 96 were not deleted. Among other things, the pictures depicted Frank engaging in sexual conduct with Minor A, Minor B holding an OraQuick HIV test and posing in a sexually explicit manner on Christmas Day, and Minors C and D dressed in various outfits on New Year's Eve. On New Year's day, Frank took the four girls to a swimming pool and then back to his hotel to have sex with them or to take sexually explicit pictures of them.

The government also presented expert witnesses to testify as to the age of the girls. One expert witness testified that Minor B was fifteen to seventeen years old, that Minors A and C were fourteen or fifteen years old, and that Minor D was eleven or twelve years old. Another expert witness testified that the girls were

---

[4] Counts 1, 2, and 6 related to Minor A; Counts 3 and 7 with Minor B; Counts 4 and 8 with Minor C; and Counts 5 and 9 with Minor D.

5

under sixteen years of age.  Frank's defense at trial was that he reasonably believed the girls to be eighteen years or older at the time of the offense, that he did not purchase the girls, and that he traveled to Cambodia for business and not to engage in illicit sexual conduct.  The jury found Frank guilty of Counts 1, 2, 4–6, and 8–10.  A mistrial was declared as to Counts 3 and 7, which concerned Minor B.

Frank was sentenced to concurrent terms of 360 months' imprisonment on Counts 1, 2, 4, 5, and 10, with 15 years' supervised release.  He was sentenced to 480 months' imprisonment on Counts 6, 8, and 9, running concurrently, and 15 years' supervised release.

## II.  DISCUSSION

### A.  The District Court Properly Denied Frank's Motion to Suppress

A district court's denial of a motion to suppress is a mixed question of law and fact.  *United States v. Ramos*, 933 F.2d 968, 972 (11th Cir. 1991) (per curiam) (citing *United States v. Nixon*, 918 F.2d 895, 902 (11th Cir. 1990)).  We review factual findings for clear error, but we review the district court's application of the law to those facts *de novo.  Id.*

Cambodian law enforcement officers detained and interrogated Frank without reading him *Miranda* warnings.  The district court denied Frank's motion to suppress his statements obtained from the interrogation because it found that

*Miranda* warnings were not needed and that Frank's confession was voluntary. Generally, "statements obtained by foreign officers conducting interrogations in their own nations have been held admissible despite a failure to give *Miranda* warnings to the accused." *United States v. Heller*, 625 F.2d 594, 599 (5th Cir. 1980) (citing *Kilday v. United States*, 481 F.2d 655, 656 (5th Cir. 1973)).[5] The reasoning behind this rule is that the exclusion of evidence by an American court has little to no deterrent effect on foreign police practices. *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976). That is, our "Constitution cannot compel such specific, affirmative action by foreign sovereigns." *Kilday*, 481 F.2d at 656. Two exceptions to this general rule are: (1) if the foreign officers' conduct "shocks the conscience of the American court" and (2) if "American officials participated in the foreign . . . interrogation, or if the foreign authorities were acting as agents for their American counterparts," also known as the joint venture doctrine. *Heller*, 625 F.2d at 599 (citing *Morrow*, 537 F.2d at 139); *United States v. Behety*, 32 F.3d 503, 511 (11th Cir. 1994).

Frank concedes that his arguments are foreclosed by our precedent.[6] First,

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6] Instead, Frank advocates a change in the current law in this area. He argues that our precedent is dated because, in light of our globalized approach to law enforcement, *Miranda* warnings would have a deterrent effect on foreign officials. Because financial assistance to Cambodia is conditioned upon Cambodia's efforts to combat human trafficking, Frank contends that we

Frank's statements do not fall under the joint venture doctrine. American officials did not know of Frank's presence in Cambodia until after he was arrested and did not participate in Frank's detention or interrogation. When Agent Phillips attempted to interrogate Frank, after giving him *Miranda* warnings, he was cut short when Cambodian officers came in to bring Frank before a judge. At all times, the Cambodian officers acted out of their own interest in determining whether Frank violated Cambodian laws. The officers then released Frank and allowed him to travel to Vietnam without notifying the United States. Consequently, there is no evidence that the Cambodian officers acted as agents of the United States.[7]

Second, Frank's interrogation does not shock the judicial conscience. Frank was not held in a jail but allowed to sleep overnight in Keo's office. The interview lasted less than two hours. Frank was treated with respect, offered food and water,

---

should require Cambodian officials to give a version of the *Miranda* warnings to United States citizens suspected of child trafficking crimes. *See* U.S. Dep't of State, Trafficking in Persons Report, at 15–16 (2003), *available at* http://www.state.gov/g/tip/rls/tiprpt/2003 (noting that countries that do not make significant efforts to comply with certain minimum standards laid out by the U.S. State Department could lose U.S. financial assistance).

[7] *See, e.g.*, *Kilday*, 481, F.2d at 655–56 (*Miranda* warnings unnecessary even though defendant was arrested in connection with a bank robbery that occurred in the United States, was questioned by an Interpol agent, and an American consular official was present as an interpreter during the interrogation); *Heller*, 625 F.2d at 599–600 (holding exclusionary rule did not apply when defendant was apprehended by British officials based on tip by American agent, defendant and evidence were seized before American agents arrived, defendant was charged initially with violating British law, and American agent only interviewed defendant after obtaining permission from British authorities).

8

and was not beaten or threatened in any way. Based on these facts, we also find that Frank's confession was voluntary. *See Martin v. Wainwright*, 770 F.2d 918, 924–25 (11th Cir. 1985), *modified on other grounds*, 781 F.2d 185 (11th Cir. 1986) (finding that defendant's confession was voluntary when officers interrogated him for five hours, cursed him, discussed the death penalty, and provided him with false information). As such, the district court did not err in denying Frank's motion to suppress his statements resulting from interrogation by Cambodian officials.

**B. 18 U.S.C. § 2251A Applies Extraterritorially to Reach Frank's Conduct**

Frank argues that 18 U.S.C. § 2251A does not apply extraterritorially, meaning that it does not reach conduct that occurs wholly outside the United States. Pursuant to 18 U.S.C. § 2251A(b)(2)(A) and (c)(1), "[w]hoever purchases . . . a minor . . . with intent to promote . . . the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct," and "in the course of the conduct described . . . the minor or the actor traveled in or was transported in or affecting interstate or foreign commerce" is guilty of an offense punishable by fine and not less than 30 years' imprisonment or for life.

Congress has the power to apply its laws extraterritorially, but whether it has

done so is a matter of statutory construction that is subject to plenary review.[8]
*Foley Bros. v. Filardo*, 336 U.S. 281, 284–85, 69 S. Ct. 575, 577 (1949); *United States v. MacAllister*, 160 F.3d 1304, 1306 (11th Cir. 1998) (per curiam); *United States v. Baker*, 609 F.2d 134, 136 (5th Cir. 1980).

We presume that statutes only apply domestically, and give extraterritorial effect "where congressional intent is clear." *MacAllister*, 160 F.3d at 1307. However, in *United States v. Bowman*, 260 U.S. 94, 97–98, 43 S. Ct. 39, 41 (1922), the Supreme Court held that extraterritorial application can be inferred in certain cases even absent an express intention on the face of the statute. We have interpreted *Bowman* to hold that extraterritorial application "may be inferred from the nature of the offense[] and Congress' other legislative efforts to eliminate the type of crime involved." *Baker*, 609 F.2d at 136; *see also MacAllister*, 160 F.3d at 1307–08. Crimes fall under the *Bowman* exception when limiting "their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens . . . in foreign countries as at home." *United States v. Plummer*, 221 F.3d 1298, 1304 (11th Cir. 2000) (quoting *Bowman*, 260 U.S. at 98, 43 S. Ct. at 41). Thus, we have upheld extraterritorial application of statutes

---

[8] Frank does not challenge Congress's authority to pass 18 U.S.C. § 2251A, nor does he argue that Congress was without power to apply it extraterritorially.

10

"where the nature of the activities warranted a broad sweep of power." *Baker*, 609

F.2d at 137.[9]

We must determine whether Congress intended § 2251A to apply to United

States citizens engaged in conduct wholly outside of the United States. To date, no

circuit court has decided this issue.[10] After considering the language of the statute,

the nature of the offense covered by 18 U.S.C. § 2251A, and Congress's other

efforts to combat child pornography, we find that 18 U.S.C. § 2251A applies

extraterritorially to reach Frank's conduct.

## 1. Congress intended 18 U.S.C. § 2251A to apply extraterritorially

Section 2251A requires that in the course of the prohibited conduct, the

defendant or minor "*travel[] in . . .* interstate or *foreign commerce*," making plain

Congress's intent that the statute sweep broadly and apply extraterritorially. 18

U.S.C. § 2251A(c)(1) (emphasis added); *see, e.g.*, *United States v. Hill*, 279 F.3d

---

[9] It is under the *Bowman* exception that several drug trafficking or smuggling statutes have been applied extraterritorially. *See Plummer*, 221 F.3d at 1305 (statute prohibiting attempts to smuggle goods into the United States); *MacAllister*, 160 F.3d at 1307 (statute punishing conspiracy to export cocaine from United States); *Baker*, 609 F.2d at 137–38 (statutes punishing possession with intent to distribute and conspiracy to do the same); *United States v. Perez-Herrera*, 610 F.2d 289, 290 (5th Cir. 1980) (statute punishing attempts to import controlled substances into the United States). In *Baker*, the Fifth Circuit held that a law prohibiting possession with intent to distribute was part of a "comprehensive legislative scheme designed to halt drug abuse in the United States by exercising effective control over the various domestic and foreign sources of illegal drugs." 609 F.2d at 137.

[10] However, the Northern District of Texas has applied 18 U.S.C. § 2251A extraterritorially in response to a motion to dismiss the defendant's indictment. *See United States v. Bredimus*, 234 F. Supp. 2d 639, 650 (N.D. Tex. 2002).

731, 739 (9th Cir. 2002) (inclusion of a "travel in interstate *or foreign commerce*" provision "makes plain the intent of Congress to apply the law internationally" and "strongly suggests that Congress intended to cast a broad net and apply the statute to all offenders, whether or not they are found in the United States"); *United States v. Noriega*, 746 F. Supp. 1506, 1518–19 (S.D. Fla. 1990) (upholding extraterritorial application due to the broad purpose and language of the Travel Act, 18 U.S.C. § 1952, which punishes "travel in interstate or foreign commerce" with intent to promote unlawful activity). "Travel[] . . . in foreign commerce" should logically be read to include traveling from the United States to a foreign country, and then purchasing a minor in that country for use in child pornography.[11] 18 U.S.C. § 2251A(c)(1). For example, 18 U.S.C. § 2423(c), which punishes anyone "who *travels in foreign commerce*, and engages in any illicit sexual conduct," has been applied extraterritorially. *United States v. Clark*, 435 F.3d 1100, 1106 (9th Cir. 2006) (holding that the title of the statute, "Engaging in illicit sexual conduct in foreign places," and the requirement that the defendant "travel[] in foreign commerce," evinced Congressional intent to apply the statute

---

[11] Arguably, one could interpret the "foreign commerce" provision to punish an actor only if he or she travels from a foreign country into the United States, and then purchases a minor for use in child pornography. However, "nothing in [§ 2251A] indicates it was designed to punish behavior going only one direction," and such a narrow construction would greatly curtail the scope and effectiveness of the statute. *United States v. Martinez*, 599 F. Supp. 2d 784, 798 (W.D. Tex. 2009) (applying 18 U.S.C. § 2423 extraterritorially).

extraterritorially); *Martinez*, 599 F. Supp. 2d at 797–98 (same); *United States v. Strevell*, 11th Cir. 2006, __ F.3d __, at *3 (No. 05-10873, June 20, 2006) (holding that the language and history of § 2423(c) undercuts any argument that the statute does not apply extraterritorially).

Furthermore, extraterritorial application is supported by the nature of § 2251A and Congress's other efforts to combat child pornography. Section 2251A is part of a comprehensive scheme created by Congress to eradicate the sexual exploitation of children and eliminate child pornography, and therefore warrants a broad sweep. *See United States v. Thomas*, 893 F.2d 1066, 1068–69 (9th Cir. 1990) (citing 18 U.S.C. §§ 2241–2257). Since 1977, Congress has passed numerous statutes to combat child pornography and the sexual exploitation of children.[12] As part of this effort, § 2251A was included in the Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100-690, Title VII, Subtitle N, § 7512, 102 Stat. 4181 (1988) ("1988 Act").[13] The statute falls under Chapter 110 of

---

[12] *See, e.g.*, Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7 (1978); Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1984); Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100-690, Title VII, Subtitle N, 102 Stat. 4181 (1988); Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, 109 Stat. 774 (1995); Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, § 121, 110 Stat. 3009-26 (1996); Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974 (1998); Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003).

[13] The 1988 Act provided federal prosecutors with a number of tools to better combat child pornography, including provisions that criminalized "computer porn," made child pornography

13

Title 18 of the United States Code, which punishes offenses dealing with the sexual exploitation and other abuse of children.

Courts have applied other child pornography statutes found in this chapter extraterritorially on the authority of *Bowman*, further evincing the broad sweep of these statutes. *See, e.g.*, *United States v. Harvey*, 2 F.3d 1318, 1320, 1327–28 (3d Cir. 1993) (applying 18 U.S.C. § 2252(a)(4)(B) extraterritorially);[14] *Thomas*, 893 F.2d at 1068–69 (applying 18 U.S.C. § 2251(a) extraterritorially). In *United States v. Kapordelis*, 569 F.3d 1291, 1307 (11th Cir. 2009), we adopted the reasoning of *Thomas* to apply 18 U.S.C. § 2251(a), which punishes similar conduct as § 2251A, extraterritorially.[15] *Id.* (citing *Thomas*, 893 F.2d at 1069). These courts examined the legislative history and purposes behind the child pornography statutes in question to determine that the nature of the activities covered by these statutes warrants a broad sweep of power.[16] Moreover, as the court in *Harvey* found, "[a]

violations predicate acts under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, criminalized possession with intent to distribute obscenity that has crossed state lines, restricted "dial-a-porn" businesses, and made possession of child pornography with intent to distribute on federal property a criminal offense. *See* 1988 Act §§ 7511, 7514, 7521, 7524, 7526.

[14] Section 2252(a)(4)(B) prohibits the knowing possession of child pornography that has been mailed or transported in interstate or foreign commerce.

[15] Section 2251(a) punishes anyone who "employs, uses, persuades, induces, entices, or coerces any minor" for the purpose of producing child pornography. When Congress passed the 1988 Act, it did so to enact § 2251A, but also to amend § 2251. *See* 1988 Act § 7511.

[16] For instance, the Protection of Children Against Sexual Exploitation Act of 1977 was passed to "greatly enhance" the "weapons to combat child pornography and child prostitution." *Harvey*,

primary motivation for expanding the anti-child pornography laws was that 'many of the sources of child pornography never came within the purview of federal investigators.'" 2 F.3d at 1327 (quoting S. Rep. No. 95-438, at 10 (1977)); *see also* Statement of Sen. Joseph R. Biden, Hearing on Child Pornography Protection Act of 1996*, available at* 1996 WL 292976 (F.D.C.H.) (June 4, 1996) (stating that Congress has "kept a sharp eye on the problem of child pornography, and where [it] ha[s] found gaps in the coverage of the criminal law, [it] ha[s] moved quickly to fill them").

Congress has also amended its laws to allow for extraterritorial application when it has discovered loopholes in its statutory scheme. *See, e.g.*, *Baker*, 609 F.2d at 137–38 (finding support in the fact that the Comprehensive Drug Abuse Prevention and Control Act of 1970 contained a variety of provisions explicitly covering extraterritorial acts). For instance, Congress amended 18 U.S.C. § 2423 in 2003 to eliminate the requirement that the government had to prove the intent to engage in sexual activity, and instead allowed prosecution where the defendant traveled in foreign commerce and actually engaged in illicit sexual activity with a minor. *See* PROTECT Act, § 105, 117 Stat. at 654, codified as amended at 18

---

2 F.3d at 1327 (quoting S. Rep. No. 95-438, at 9). Congress passed the Act "as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of [child pornography]." *Id.* (alteration in original) (quoting *United States v. Wright-Barker*, 784 F.2d 161, 167 (3d Cir. 1986)).

15

U.S.C. § 2423(c); H.R. Rep. No. 107-525 (2003) (Congress noted that this "legislation [would] close significant loopholes in the law that persons who travel to foreign countries seeking sex with children are currently using to their advantage in order to avoid prosecution").  Additionally, Congress enacted 18 U.S.C. § 2251(c) to clarify that acts covered under 18 U.S.C. § 2251(a) applied extraterritorially.  *See* H.R. Rep. No. 108-66, at 62–63 (2003) (Conf. Rep.) (implying that the enactment of § 2251(c) was partly in response to *Thomas*).

The language of § 2251A requiring travel in foreign commerce, the broad sweep warranted by child pornography offenses, and Congress's repeated efforts to prevent exploiters of children from evading criminal punishment demonstrate that Congress intended § 2251A to apply extraterritorially.

## 2. Exercise of jurisdiction over Frank comports with international law

Before we can give § 2251A extraterritorial effect as Congress intended, we must determine whether doing so would violate international law.  *MacAllister*, 160 F.3d at 1308 & 1308 n.9 (citation omitted) (describing five general principles that permit the exercise of criminal jurisdiction).  Jurisdiction exists under the "nationality" principle, which allows a country "to exercise criminal jurisdiction over one of its nationals."  *Plummer*, 221 F.3d at 1307 (citing *Rivard v. United States*, 375 F.2d 882, 885–86 (5th Cir. 1967)).  Because Frank is a United States

16

citizen, the United States properly exercised jurisdiction over him. *See id.*; *United States v. Reeh*, 780 F.2d 1541, 1543 n.2 (11th Cir. 1986) (citing *United States v. Mitchell*, 553 F.2d 996, 1001 (5th Cir. 1977) ("[A] state may punish the wrongful conduct of its citizens no matter where it takes place.").  Therefore, we find that 18 U.S.C. § 2251A applies extraterritorially to reach Frank's conduct outside of the United States.

## C. There was Sufficient Evidence that Frank Engaged in "Illicit Sexual Conduct" and "Purchased" Minors

Frank appeals the district court's denial of his Rule 29 motion for judgment of acquittal, arguing that there was insufficient evidence that he (1) engaged in "illicit sexual conduct" with the minor girls, in violation of 18 U.S.C. § 2423(c), and (2) "purchased" the minor girls, in violation of 18 U.S.C. § 2251A(b).  We review the sufficiency of evidence supporting a criminal conviction *de novo*, with the evidence "viewed in the light most favorable to the government" and "all reasonable inferences and credibility choices made in the government's favor." *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (citing *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994)).  "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999).

17

## 1. Illicit sexual conduct under 18 U.S.C. § 2423(c)

Frank challenges the sufficiency of the evidence convicting him of three counts of engaging in "illicit sexual conduct" in violation of 18 U.S.C. § 2423(c), which punishes one who "travels in foreign commerce, and engages in any illicit sexual conduct with another person." In Frank's case, the illicit sexual conduct was a "commercial sex act . . . with a person under 18 years of age." 18 U.S.C. § 2423(f).[17] Frank contends that there was insufficient evidence that he engaged in a sex act with Minors A, C, and D because his confession does not state which girl or girls had sex with him, rather than only posing for nude pictures.

Frank confessed that he took "these young girls" to his hotel room "to have sex with them, or to take nude pictures (pornographic) of them." D.E. 313 at 2654. Frank's confession goes on to state, "[a]s for the four young girls police brought here with me, I have taken them to the hotel many times, and among the four, I know the girl named Dieu. The other three I know their faces because these four girls came for the pictures and to have sex together." D.E. 313 at 2655. The other three girls were Minors A, C, and D. The government also presented photographs that Frank took of the minor girls in sexually explicit poses on the bed and, in some photographs, holding HIV testing kits. Furthermore, Viagra medication, condoms,

---

[17] A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

lubricant, and sexually explicit images of other minors were found in Frank's hotel room at the time of his arrest.

Frank's statement that the minor girls came to his hotel "for the pictures and to have sex together," taken into account with the other evidence presented, allowed the jury to conclude beyond a reasonable doubt that Frank engaged in illicit sexual conduct with Minors A, C, and D.

## 2. Purchase of minors under 18 U.S.C. § 2251A

As a matter of first impression, we must determine whether paying a minor directly for sex constitutes a "purchase[] . . . of a minor," as that term is used in 18 U.S.C. § 2251A(b)(2). The jury was instructed that to "purchase" is "to buy or to obtain or acquire in exchange for money or its equivalent, or by paying a price." D.E. 328 at 4458. Frank argues that there was insufficient evidence that he "purchas[ed] . . . a minor," as required by 18 U.S.C. § 2251A(b), because (1) the term "purchase" requires that a defendant purchase a minor from a third party, rather than from the minor herself; and (2) the phrase "purchase[] or otherwise obtain[] custody or control" requires that purchase must be a form of control, which Frank argues is only achieved through "sexual slavery," such as forced prostitution or captivity for the purpose of producing child pornography. We disagree.

19

We interpret words that are not defined in a statute "with their ordinary and plain meaning because we assume that Congress uses words in a statute as they are commonly understood; we give each provision full effect." *United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir. 1998); *see also Smith v. United States*, 508 U.S. 223, 228, 113 S. Ct. 2050, 2054 (1993). "Review of legislative history is unnecessary 'unless a statute is inescapably ambiguous.'" *Veal*, 153 F.3d at 1245 (quoting *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam)).

Section 2251A(b)(2)(A) punishes "[w]hoever purchases or otherwise obtains custody or control of a minor . . . with intent to promote . . . the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct." "Purchase," as used in 18 U.S.C. § 2251A(b), is not defined. Therefore, we must construe the term in accordance with its ordinary meaning. The dictionary defines "purchase" as "to get into one's possession" or "to obtain (something desired) by an outlay." Webster's Third New International Dictionary 1844 (Philip Babcock Gove et. al. eds., 1981). "Obtain" is defined as "to gain or attain possession or disposal" or "hold, keep, possess, occupy." *Id.* at 1559. "Possession" is defined as "the act or condition of having in or taking into one's control or holding at one's disposal." *Id.* at 1770. By contrast, the word

20

"hire" is defined as "to engage the personal services of for a fixed sum." *Id.* at 1072. A fashion designer, therefore, would not say that she "purchased" a clothing model for a photo shoot because that relationship lacks the requisite element of "taking into one's control." Rather, the designer would say that she "hired" a clothing model because the relationship is contractual, not possessive.

The phrase "purchase a woman," however, can be used synonymously with prostitution. *See, e.g.*, Teela Sanders, Maggie O'Neill, Jane Pitcher, Prostitution: Sex Work, Policy & Politics 85 (Sage Publications Ltd. 2009); Janice G. Raymond, Legitimating Prostitution as Sex Work: UN Labour Organization (ILO) Calls for Recognition of the Sex Industry (Part One) 2003, *available at* http://sisyphe.org/spip.php?article689 (last visited Mar. 11, 2010); Stefan Zweig, The World of Yesterday 83 (University of Nebraska Press 1964) (1943). This use of the word "purchase" is indicative of the complicated nature of prostitution, an act that some argue blurs the very line between possession and free will. *See* Dorchen A. Leidholt, Co-Executive Dir., Coal. Against Trafficking in Women, Sex Trafficking is Contemporary Slavery: Statement Presented to the United Nations General Assembly (Dec. 6, 1996), *available at* http://cpcabrisbane.org/Kasama/1997/V11n2/SexTrafficking.htm (last viewed Mar. 11, 2010). For this reason, it has been suggested that selling onself for money is a

form of temporary enslavement. *See id.* An understanding of the phrase "purchases . . . a minor" to include paying a minor for sex, therefore, is acceptable under 18 U.S.C. § 2251A(b), despite the word "purchase" not generally being associated with payment for services in other contexts. *See Smith*, 508 U.S. at 230, 113 S. Ct. at 2055 (holding that the most common definition of a word does not preclude other accepted alternatives). For this reason, we find Frank's narrow interpretation of "purchase," which would only apply to situations where a third party sells a minor against her will to the defendant, to be at odds with its plain meaning and the context of 18 U.S.C. § 2251A.

"Purchase" does not require the sale of a minor from a third party to the defendant. In the context of child prostitution, the minor herself is turned into an object or commodity, by selling her body to be used by the defendant for a certain purpose. A minor cannot separate her services from herself because she lacks the capacity to do so. Congress used the term "purchase" alone, rather than "purchase from the minor herself," "purchase a minor's services," or "purchase from another," to encompass situations where money is paid to a third party *and* where money is paid directly to the minor. *See, e.g.*, *Smith*, 508 U.S. at 228–30, 113 S. Ct. at 2054–55 (holding that "use" of a firearm included the exchange of a gun for drugs and noting that simply because "use as a weapon" is the first example "to

22

come to mind when the phrase 'uses . . . a firearm' is uttered does not preclude us from recognizing that there are other 'uses' that qualify as well"); *United States v. Murrell*, 368 F.3d 1283, 1286–87 (11th Cir. 2004) ("inducing" a person to engage in prostitution encompassed situations where a person communicated with a third party).  If Congress intended to use a narrower construction, it could have expressed that intent in the language.  *Smith*, 508 U.S. at 229, 113 S. Ct. at 2054.  However, it did not, and we will not impose an additional requirement that a middleman be involved.  *See id.*

Furthermore, the context of "purchase" in § 2251A mandates a broad interpretation.  Viewed in isolation, "purchase" may seem to imply ownership obtained from a third party, but the context of "purchase" in § 2251A does not allow such a restrictive construction.  *See id.* at 229 ("Language, of course, cannot be interpreted apart from context.  The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").  Section 2251A(b)(2) punishes a person who "purchases or otherwise obtains custody or control of a minor."  "Custody or control," in turn, is defined broadly as "includ[ing] *temporary* supervision over or responsibility for a minor whether legally or illegally obtained."  18 U.S.C. § 2256(7) (emphasis added).  "Control" does not require the exchange of a minor from a third party to

23

the defendant. For example, one can obtain control over a minor by kidnaping him or her. *See, e.g.*, *United States v. Buculei*, 262 F.3d 322, 331–33 (4th Cir. 2001) (finding that defendant exercised control over a minor when he drugged her, and declining to require that control be obtained from the minor's parents). Moreover, neither custody nor control require ownership of the minor or any other permanent relationship; rather, the "custody or control" can be "temporary." 18 U.S.C. § 2256(7). Because "custody or control" is given an expansive definition, it would be inconsistent to narrow the meaning of "purchase" to imply ownership or sale by a third party.

Additionally, Frank argues that the use of "otherwise" in § 2251A demonstrates that "purchase" must be a form of control, and that such control was not found by the jury. In a special verdict form offered by the defense, the jury was asked to determine whether Frank committed the following act or acts: "Purchase only," "Control only," or "Both purchase and control." D.E. 244 at 1–2. The jury selected "Purchase only." *Id*. Frank argues that because the jury did not select "Both purchase and control," there was insufficient evidence of "control," which he argues is required for "purchase" under § 2251A. Frank is incorrect, however, because as previously discussed, control is inextricably intertwined within the meaning of purchase. For this reason, paying a minor money in

24

exchange for sex constitutes the "purchase[] . . . of a minor." It is the purchase itself, the paying of money to obtain or acquire the minor's body, that is the means of control.

Frank's narrow construction of "purchase" would undercut Congress's intent to cast a wide net in preventing the sexual exploitation of children. *See supra*, Section B, Part 1. The efficacy of § 2251A "would be eviscerated if a defendant could circumvent the statute simply by" targeting a minor directly, rather than a parent or other third party. *Murrell*, 368 F.3d at 1287.

We find that the term "purchase," as used in § 2251A(b), covers situations where a defendant pays a minor directly for sex. Frank's confession states that he paid young girls to have sex or take nude pictures and that he knew Minors A, C, and D because they had gone to his hotel room "for the pictures *and* to have sex together." D.E. 313 at 2655 (emphasis added). Thus, a jury could have rationally found that Frank paid the minors to engage in sex and to take sexually explicit pictures. As such, the jury reasonably found that Frank "purchased" the minor girls when he paid them money to return to his hotel in order to engage in sexual relations.

**D. The District Court Properly Instructed the Jury as to "Purchase" and "Sexual Act"**

We review the legal correctness of jury instructions *de novo*, but defer to the

25

district court on questions of phrasing absent an abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).

### 1. Jury instruction on "purchase" in 18 U.S.C. § 2251A(b)

Frank's arguments regarding the district court's jury instruction on "purchase" are based on his assertion that "purchase" requires a third party. He argues that the jury instruction allowed the government to argue to the jury that purchasing a minor from herself was sufficient under 18 U.S.C. § 2251A. For the reasons previously given, we find his argument to be unavailing. *See supra*, Section C, Part 2.

### 2. Jury instruction on "sexual act" in 18 U.S.C. § 2423(b)

Frank argues that the district court erred in its jury instruction defining "sexual act." The instruction was given for Count 10, charging a violation of 18 U.S.C. § 2423(b), which punishes a person who travels *with the intent* to engage in illicit sexual conduct.[18] Frank challenges the following instruction defining "sexual act:"[19]

---

[18] "Illicit sexual conduct" is defined as "(1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age." 18 U.S.C. § 2423(f).

[19] Frank asserts that this instruction was given for Counts 1–5, which deal with 18 U.S.C. § 2423(c), a statute that punishes the engaging in of illicit sexual conduct. However, the above instruction was actually given for Count 10, charging a violation of 18 U.S.C. § 2423(b), and Frank's arguments relate to the element of intent in § 2423(b).

26

A, contact between the penis and the vulva or the penis and the anus involving penetration, however slight; B, the penetration, however slight, of the anal or genital opening by a hand or finger with an intent to arouse or gratify the sexual desire of any person; or, C, the intentional touching, not through the clothing, of the genitalia with an intent to arouse or gratify the sexual desire of any person.

D.E. 328 at 4460. The instruction tracks the language of 18 U.S.C. § 2246, which defines "sexual act." Frank argues that the instruction is inappropriate because there was no evidence in the photographs of penetration with a hand or finger or intentional touching with the intent to arouse or gratify sexual desire, which he contends are more specific types of touching. However, there did not have to be evidence that such conduct occurred, since the jury could have inferred from the photographs that Frank *intended* to engage in such conduct, in violation of 18 U.S.C. § 2423(b).[20] As a result, the district court did not err in its jury instruction on "sexual act" under 18 U.S.C. § 2423(b).

## E. Comments Made During the Opening and Closing Statements Do Not Warrant Reversal

Frank argues that improper arguments made in the government's opening and closing statements unfairly prejudiced him. "Prosecutorial misconduct

---

[20] Even if the evidence is insufficient to support alternative legal theories of liability (in this case Sections B and C of the jury instructions), a jury instruction on that theory "does not provide an independent basis for reversing an otherwise valid conviction." *Griffin v. United States*, 502 U.S. 46, 59–60, 112 S. Ct. 466, 474 (1991) (jurors presumed capable of convicting on factually supported grounds and rejecting unproven alternative grounds); *see also United States v. Stone*, 9 F.3d 934, 939 (11th Cir. 1993) (quoting *Griffin*, 502 U.S. at 60, 112 S. Ct. at 474).

requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant['s] substantive rights." *United States v. Delgado*, 56 F.3d 1357, 1368 (11th Cir. 1995) (citing *United States v. Cole*, 755 F.2d 748, 767 (11th Cir. 1985)).  We must examine the statements "in the context of the trial as a whole and assess their probable impact on the jury." *United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998) (alteration in original) (quoting *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995)).  Thus, even when error occurs, the defendant's substantial rights are not affected if the evidence sufficiently established his guilt.  *United States v. Adams*, 74 F.3d 1093, 1100 (11th Cir. 1996). Nevertheless, the "cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary." *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993).

If the defendant fails to object to the alleged misconduct below, this Court reviews for plain error. *United States v. Abraham*, 386 F.3d 1033, 1036 (11th Cir. 2004) (per curiam) (citation omitted).  Plain error requires (1) an error, (2) the error is plain or obvious, and (3) the error affects the defendant's substantial rights.

*United States v. Olano*, 507 U.S. 725, 732–34, 113 S. Ct. 1770, 1777–78 (1993). "The plain error rule should be used sparingly, and a conviction should be reversed only if 'a miscarriage of justice would otherwise result.'" *United States v. Elkins*, 885 F.2d 775, 787 (11th Cir. 1989) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 1046 (1985)).

Frank claims that the government committed reversible error in referring to admissible 404(b) evidence in its opening argument when that evidence was not ultimately introduced. Because Frank did not object below to the statement, we review for plain error. The prosecutor informed the jury that it would hear from Sovanny Ly, an underage Cambodian prostitute whom Frank allegedly paid for sex. Her testimony would have helped establish Frank's intent to engage in illicit sexual conduct in Cambodia, as required by 18 U.S.C. § 2423(b). However, the prosecution never called Ly as a witness. We have refused to find plain error in a prosecutor's reference in opening statements to evidence that was never introduced at trial, particularly absent a showing of bad faith. *Id*. at 787; *United States v. Gray*, 730 F.2d 733, 735 (11th Cir. 1984) (per curiam). Frank concedes that the government did not make the misstatement in bad faith. As such, we find no plain error in the prosecutor's comment.

Frank also claims that the prosecutor committed reversible error when he made the following remarks in closing argument: (1) that the prosecution did not

have to prove that Frank was a "shark," "predator," "child molester," or "pederast," but that the jury would conclude that Frank had an unnatural sexual interest in underage girls; (2) that the prosecutor did not doubt that Frank wished to move to Cambodia and buy a house to fill with kids; and (3) that Frank produced child pornography. We review the first two statements for plain error because the defense did not object to them below. The defense objected to the last statement, and the district court issued a curative instruction that this was not a child pornography case.

The comments about "sharks" and "predators" were made in response to the defense's closing statement, which described Frank as a "dolphin," instead of a predatory "shark" that exploits young foreign girls. The defense concluded that if Frank was "not the predator, then [the jury] must set him free." A prosecutor is entitled to make a fair response to defense counsel's arguments, and when the defense elicits otherwise inadmissible statements, any error is invited. *United States v. Ard*, 731 F.2d 718, 728 (11th Cir. 1984) (citing *United States v. Russell*, 703 F.2d 1243, 1248 (11th Cir. 1983); *United States v. Males*, 715 F.2d 568, 571 (11th Cir. 1983)). While the statement about filling a house with children may have been improper, we find no plain error in the statement. The statement that Frank made his own child pornography was a reference to the numerous sexually explicit photographs that had been admitted into evidence. Further, any error was

30

cured when the district court instructed the jury to disregard the reference. *See*

*United States v. Gonzalez*, 122 F.3d 1383, 1389 (11th Cir. 1997).

Even assuming the remarks made during opening and closing statements were errors, they did not affect Frank's substantial rights. In light of the several-week trial, the evidence of Frank's guilt (including his own statements), the court's curative instruction as to one statement, and its general instructions that comments of counsel were not evidence, the errors did not prejudice Frank, even considered cumulatively. As a result, the prosecutor's statements do not warrant reversal.

## F. The District Court Properly Imposed Multiple Sentences for Counts 2, 4, and 5 (Violations of 18 U.S.C. § 2423(c))

Frank argues that the district court erred when it imposed multiple counts and sentences for Counts 2, 4, and 5, which convicted Frank of traveling in foreign commerce and engaging in illicit sexual conduct with Minors A, C, and D, in violation of 18 U.S.C. § 2423(c). For each of Counts 2, 4, and 5, Frank was sentenced to concurrent terms of 360 months' imprisonment. "Multiplicity is the charging of a single offense in more than one count," which could result in multiple sentences for the same offense or could prejudice the jury by suggesting the defendant committed several crimes instead of one. *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991) (citing *United States v. Anderson*, 872 F.2d

31

1508, 1520 (11th Cir. 1989)).  Frank argues that the district court should not have imposed multiple sentences because he engaged in sexual conduct with the minors in one trip to Cambodia.

We review for plain error because Frank did not object to his multiple sentences below.  *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  This Court has held that "an error cannot meet the 'plain' requirement of the plain error rule if it is not clear under current law."  *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) (alteration in original) (quoting *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam)).  Therefore, if the explicit language of the statute or rule does not specifically resolve the issue, and there is no precedent from this Court or the Supreme Court directly resolving it, there is no plain error.  *Id.* (citing *Chau*, 426 F.3d at 1322).

To determine whether an indictment is multiplicitous, courts must determine the allowable unit of prosecution.  *Langford*, 946 F.2d at 802.  In *Bell v. United States*, 349 U.S. 81, 81–84, 75 S. Ct. 620, 621–22 (1955), the Supreme Court addressed the issue of multiplicity in relation to a statute criminalizing the transportation of women for purposes of prostitution.  The Court applied the rule of lenity to construe the allowable unit of prosecution as the "transportation," and therefore held that there was only one offense when the defendant transported two

women in one vehicle in one trip. *Id.* However, because 18 U.S.C. § 2423(c) punishes both traveling *and* engaging in illicit sexual conduct, *Bell* does not directly resolve the question of whether 18 U.S.C. § 2423(c) allows multiple sentences for making a single trip during which the defendant engaged in illicit sexual conduct with multiple minors. Frank's crime concerned travel to Cambodia *and* the sexual exploitation of three separate minors. Accordingly, we find no plain error in the court's imposition of multiple sentences because any error is not clear under existing law.

## G. The District Court Did Not Violate Federal Rule of Criminal Procedure 30

Frank argues that the district court violated Federal Rule of Criminal Procedure 30 when it provided the jury with supplemental instructions and a special verdict form during deliberations, which stated that jurors only had to find either purchase or control for Counts 6–9. Rule 30(b) requires the district court to inform the parties before closing arguments as to how it will rule on requested instructions, so that counsel is able to argue intelligently to the jury. *United States v. Pena*, 897 F.2d 1075, 1084 (11th Cir. 1990). However, when a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result. *United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001); *United States v. Stone*, 139 F.3d 822, 838 (11th

33

Cir. 1998) (per curiam).  Frank invited error when he not only agreed with the

supplemental instructions and special verdict form, but requested them.  Therefore,

he has waived his right to challenge the district court's admission of these

instructions.

## H.  The District Court Properly Admitted Frank's Confession

We review evidentiary rulings for abuse of discretion.  *United States v.*

*Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990) (citing *United States v. Kelly*, 888

F.2d 732, 743 (11th Cir. 1989)).  Further, we will not reverse an evidentiary error

unless "there is a reasonable likelihood that they affected the defendant's

substantial rights."  *Id.*  Frank argues that the district court abused its discretion

when it introduced the statements that he made during his interrogation by

Cambodian officials.  Frank's confession was written in the Cambodian language

of Khmer by a Cambodian police officer.  According to the testimony of the

Cambodian interpreter who translated Frank's statements from English to Khmer,

Seng Leena, Frank signed the Khmer confession after Seng translated it to Frank

and asked him if it fairly represented Frank's statements.  Thus, the district court

admitted the Khmer statement as either an admission by a party-opponent or a

statement against interest.  *See* Fed. R. Evid. 801(d)(2); 804(b)(3).  An English

translation of the Khmer statement was provided to the jury, and neither party

34

objected to the accuracy of this translation. Therefore, the district court did not abuse its discretion in admitting Frank's confession.[21]

### III. CONCLUSION

We find that the district court did not err when it denied Frank's motion to suppress his statements, admitted those statements at trial, denied Frank's motion for judgment of acquittal, instructed the jury, and provided the jury with supplemental jury instructions and a special verdict form at defense counsel's request. We find that 18 U.S.C. § 2251A applies extraterritorially to reach Frank's conduct. We also find no reversible error in the statements of the prosecutor or the court's imposition of concurrent 360-month sentences for Counts 2, 4, and 5. Accordingly, we affirm Frank's convictions and sentences.

**AFFIRMED**

---

[21] Furthermore, Frank's contention that the admission of his confession violated the Sixth Amendment Confrontation Clause is without merit, as we have held that a party's own admission offered against him is admissible under the Sixth Amendment. *United States v. Brown*, 441 F.3d 1330, 1358–59 (11th Cir. 2006).