**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12945

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KENTRAIL BROWN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:19-cr-00021-LAG-TQL-4

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Kentrail Brown appeals his convictions for conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, distribution of

methamphetamine, and using a firearm in furtherance of drug trafficking. Specifically, he contends that the district court committed plain error when it failed to *sua sponte* exclude certain testimony given by the government's dual lay-expert witness. Brown also argues that the district court committed plain error when it gave the jury a modified *Allen* charge after receiving a jury question about how to notate non-unanimity on the verdict form. Because the district court did not plainly err in permitting the full testimony of the dual lay-expert witness, and because Brown's counsel waived review of the proposed *Allen* charge by expressing agreement, we affirm.

## I.

A grand jury charged Brown with four counts: (1) conspiracy to possess with intent to distribute methamphetamine, (2) distribution of methamphetamine, (3) possession with intent to distribute methamphetamine, and (4) possession of a firearm in furtherance of a drug trafficking crime. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(viii), 18 U.S.C. §§ 924(c)(1)(A)(i), (2).

During Brown's criminal trial, the government called Xavier Jordan—a drug courier—who testified that a trailer in Cairo, Georgia was a methamphetamine distribution hub controlled by a man named Joseph Jones. The government's next witness, Nicholas Harden, testified that he had lived at that trailer for two years with Brown. During that time, Harden testified, he observed Brown sell methamphetamine for Jones. Harden further testified that he first

became aware that the trailer was a drug hub when his brother, Tobias Sanders, was kidnapped.

The government also produced several wiretap statements featuring Brown's coconspirators. Next, Orrie Bell testified for the government that he would trade oxycodone pills for methamphetamine at the trailer, and that sometimes these trades were with Brown. Bell stated that he twice saw Brown bring cash from the methamphetamine he had sold into the trailer. The government presented several recorded conversations between Jones and Bell in which they discussed various aspects of the drug operation; in one, Bell asked Jones where Brown was because he was looking to sell some pain pills.

The government next called Georgia Bureau of Investigation Officer Stripling Luke—the case agent who oversaw the investigation into Brown and his coconspirators. After establishing Officer Luke's credentials and experience in drug enforcement, the government tendered him as an expert witness in "lingo, tools of the trade, and the use of firearms in furtherance of drug trafficking." The district court qualified Officer Luke as an expert but instructed the jury that his opinion need not be accepted.

Officer Luke began by explaining what "corners" were: the product of cutting off the corners of a Ziplock bag to package a small quantity of drugs. He explained that the trailer contained evidence of these bags, digital scales, and measuring cups. He further testified that based on his training and experience, this evidence indicated that drug distribution was occurring at the trailer. On the

second day of trial, the government used Officer Luke to authenticate and describe several recorded telephone calls and still photographs captured on pole cameras mounted near the trailer.

As part of this testimony, Officer Luke identified several people from still images produced from the pole cameras. The prosecution asked him questions "based on [his] training and experience," pertaining to quantitative drug terms and their correlation with personal use or distribution. They also asked him to interpret a visitor's two close, successive trips to the trailer. Officer Luke speculated that the visitor could have made a quick drug sale at a nearby location and then returned to obtain more drugs, or that he could have come back to complain that he had not received enough drugs for the price he had paid.

Near the end of Officer Luke's testimony, he recounted that on the day one of the coconspirators was arrested, Officer Luke saw on the pole camera that a large gathering of people was forming at the trailer. He stated that there were at least 20 cars pulled up and described how the "body movements" of the people suggested that a "heated discussion" was going on. Officer Luke added that Sondra Jones, Joseph Jones's mother, was in this gathering. He explained that he recognized Sondra Jones because she had come to the FBI early in its investigation of the conspiracy to report her son's status as a "big drug dealer." After identifying several other still photos of the gathering, Officer Luke spontaneously opined, "there's a lot of drama that was happening at this time based on what we could see with their body movements." Officer Luke also

testified that he had arranged an undercover agent to wear a recording device and execute a controlled buy with Brown. The government produced the video of the buy, along with a still photo showing Brown weighing methamphetamine with a digital scale.

The jury began deliberating at 11:13 a.m. on the fourth day of trial. At 1:30 p.m., the jury submitted two questions to the court, one of which was "Do we need to write not guilty if we all don't agree about a count. And if so, do we still all sign." The district court conferred with the parties and suggested giving a modified *Allen* charge to advise the jury to continue deliberating until they reached a unanimous verdict. The government responded, "I agree, your Honor," and Brown's counsel responded, "Yes, your Honor." The court recharged the jury with the modified *Allen* instruction and asked the parties if they had objections. The government said that it had none, and Brown's counsel stated "No, your Honor." The jury returned to deliberate at 1:35 p.m. and 35 minutes later told the court that it had reached a verdict of guilty on all four counts. In total, the jury deliberated for about two and a half hours.

Brown appealed.

## II.

We review a district court's decisions regarding the admissibility of evidence and testimony for abuse of discretion. *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). But issues not preserved below are reviewed for plain error only. *Id.* To prevail on plain error review, a party must initially establish three

conditions: there must be an error that has not been intentionally relinquished or abandoned, that error must be plain, and the error must have affected the defendant's substantial rights such that without the error, there would have been a reasonable probability of a different result. *Id.* at 1264, 1267. If these first three conditions are met, we also consider whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* Meeting all four prongs is difficult and places a "daunting obstacle" before the appellant. *United States v. DiFalco*, 837 F.3d 1207, 1221 (11th Cir. 2016).

## III.

Brown argues that the district court erred in two ways: first, he says the district court erred when it did not *sua sponte* limit what he contends was improper and prejudicial testimony of a dual lay-expert witness; and second, he says the district court erred when it gave the jury a modified *Allen* charge after receiving a jury question about noting non-unanimity on the verdict form. We address each argument in turn.

We start with Brown's first argument that the district court erred when it did not *sua sponte* limit what he contends was improper and prejudicial testimony of a dual lay-expert witness. Brown's counsel did not object during trial to this testimony, so we review it for plain error. It is error to admit "speculative interpretive testimony" that purports to interpret "conversations as a whole." *Hawkins*, 934 F.3d at 1264. It is also error to admit testimony that interprets plain, non-coded language to the jury. *Id.* A

trial court must be vigilant against this error when a witness testifies as a dual lay-expert witness because the jury might lend unmerited weight to the expert's lay testimony. *Id.* at 1266. Hearsay (an out-of-court statement offered for the truth of the matter asserted) is also generally inadmissible. Fed. R. Evid. 801(c), 802. If the government's case hinges on testimony admitted in error, admitting the testimony is plain error because it affects the defendant's substantial rights. *Id.* at 1267. If the improper testimony is "merely cumulative" to other evidence, admitting it is not plain error. *See id.* (discussing *United States v. Emmanuel*, 565 F.3d 1324, 1336 (11th Cir. 2009)).

Brown argues that two pieces of Officer Luke's testimony were improperly admitted: his recounting of Sondra Jones's out-of-court declaration that her son was a "big drug dealer," and his speculation that there was "drama" at the trailer as exhibited by people's "body movements." Brown argues that Sondra Jones's statement was inadmissible hearsay, and that the testimony about "drama" at the trailer improperly drew a conclusion for the jury. Brown maintains that this testimony affected his substantial rights because it came from an expert witness and it associated Brown with drama, violence, and "big drug dealer[s]."

The government argues that the prosecution clearly delineated Officer Luke's expert and lay witness testimony, and that his lay witness testimony was based on firsthand knowledge. The government further maintains that the challenged testimony was given to explain how Officer Luke knew the individuals at the

trailer. The government adds that this testimony was merely cumulative to the substantial evidence establishing Brown's guilt. This evidence included the testimony of Xavier Jordan, Nicholas Harden, and Orrie Bell, as well as the phone calls, pole camera photos that tied Brown's arrivals and departures at the trailer to drug transactions, and controlled buy that resulted in photos of Brown measuring out methamphetamine on a digital scale.

We agree with the government that the failure to *sua sponte* limit Officer Luke's testimony was not plain error. Officer Luke's recounting of Sondra Jones's out-of-court declaration about her son being a "big drug dealer" was not hearsay because it was not offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2). Rather, this statement established why Officer Luke could recognize Sondra Jones in the pole camera photos. And admitting Officer Luke's observation that there was "drama" at the trailer was not error because it did not purport to interpret "conversations as a whole" or plain, non-coded language. *See Hawkins*, 934 F.3d at 1264. In addition, neither piece of testimony affected Brown's substantial rights because it was "merely cumulative" to the extensive evidence establishing Brown's guilt. *See id.* at 1267; *see also Emmanuel*, 565 F.3d at 1336. This evidence included the coconspirator testimony that Brown was selling drugs, the wiretap recordings that referenced Brown selling drugs, and the photograph of Brown measuring methamphetamine onto a digital scale during the controlled buy. The objected-to portions of Officer Luke's testimony were thus unnecessary to establish Brown's guilt.

Brown's second argument is that the district court erred when it gave the jury a modified *Allen* charge after receiving a jury question about noting non-unanimity on the verdict form. We disagree. A party may not challenge as error a ruling invited by that party. *United States v. Brown*, 934 F.3d 1278, 1301 (11th Cir. 2019). When a party agrees with a court's proposed jury instructions, the doctrine of invited error applies. *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010); *see also United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019) (holding that counsel invited error on admitting certain evidence when they responded to the court's asking if "everybody is agreeable to [admitting the contested evidence]," by saying "Yes, Your Honor").

Brown argues that he did not invite the error because mere acquiescence with a district court's decision is not the same as inviting that decision. But Brown's argument misconstrues the law, as the doctrine of invited error applies when a party expressly agrees with a court's suggestion. *See Frank*, 599 F.3d at 1240; *Jernigan*, 341 F.3d at 1290. Brown's counsel unambiguously assented to the court's proposed *Allen* charge by stating, "[y]es, your honor." Doc. 73-3 at 252. He further underlined this assent when he voiced no objection even when the court solicited objections. Therefore, the *Allen* charge was invited by Brown and thus not subject to appellate review.

## IV.

For these reasons, the district court's judgment is **AFFIRMED.**