[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 9, 2010
JOHN LEY
CLERK

No. 09-11508
Non-Argument Calendar

_____

D. C. Docket No. 08-00044-CR-T-17-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEX SHEVGERT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 9, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Alex Shevgert appeals his sentence of 300 months of imprisonment for

conspiring to travel in interstate commerce with the intent to kill, injure, and harass another person and twice aiding and abetting in the interstate travel of his co-conspirators. 18 U.S.C. §§ 2, 2261A. Shevgert argues about the sufficiency of the evidence, evidentiary rulings, cumulative error, and the enhancement and reasonableness of his sentence, all of which we affirm. Shevgert also challenges the effectiveness of trial counsel, which we decline to review.

## I. BACKGROUND

Shevgert, through an intermediary, Lark Cholak, paid Edmon Vardanyan to injure Shevgert's in-laws, Grigori and Galina Komissarchuk, because they refused to give Shevgert money. In September 2006, Cholak paid Vardanyan $2000 to travel from Tampa, Florida, to Newark, New Jersey, to attack the Komissarchuks. Shevgert recommended that Vardanyan enter the Komissarchuks' home disguised as a delivery man, but the plan failed when Grigori refused to admit Vardanyan. The next day, Cholak and Vardanyan used a van obtained from Enterprise Rent a Car to follow Grigori to a Home Depot, where Vardanyan attacked Grigori. Grigori suffered multiple facial fractures and lacerations, serious abdominal injuries, and a ruptured pancreas, and he underwent surgery and remained in the hospital for a week to recover from his injuries. After his release, Grigori continued to suffer from dizziness and ringing in his ears.

2

Shevgert retained Cholak a second time to attack the Komissarchuks. Cholak retained a driver, Michael Stofman, who traveled with Vardanyan to New Jersey. Stofman and Vardanyan watched the Komissarchuks' residence for several days, but they were unable to find an opportunity to assault the couple. In December 2006, while the Komissarchuks were in their Florida home, Shevgert led Cholak to the Komissarchuks' home. Cholak later drove Vardanyan to the house and he entered the garage as the Komissarchuks returned home from a party at Shevgert's house. Vardanyan beat Grigori and Galena with a hammer, fractured Grigori's skull, and caused Galena to suffer multiple lacerations and severe bruising.

Shevgert asked Cholak to attack Galina a second time. Cholak agreed to contact Vardanyan, but Cholak refused to participate in the attack. Shevgert retained Sergery Zub to drive Vardanyan, but Cholak coordinated the attack. In April 2007, Vardanyan and Zub flew from Florida to New Jersey, where Vardanyan attacked Galina on the street outside her home and fled in a van driven by Zub. Vardanyan beat Galina with a blunt object "so violently that her dentures flew out of her mouth." Galina was admitted to the hospital for three days to treat a fracture to her skull and a subdural hematoma, and she was placed on medication for seizures.

The Komissarchuks' son, Vadim, took pictures of the individuals who attacked Galina. Grigori recognized Vardanyan as the delivery man who had attempted to enter the Komissarchuks' home, and Galina later identified Vardanyan as her attacker in December 2006. One of the photographs showed that the van in which Vardanyan escaped in April 2007 had a license plate from Sarasota, Florida, and Grigori suspected that Shevgert was involved in the attack. When Grigori confronted Shevgert about the attacks, Shevgert admitted that "maybe [he] kn[e]w" the assailants.

Agents of the Federal Bureau of Investigation arrested several of the conspirators who, in turn, incriminated Shevgert. Police discovered Zub and Vardanyan at a liquor store in New York, but they were released when Vardanyan told the police that he was a prostitute who had been solicited by Zub. Later, Zub and Vardanyan were arrested and cooperated with federal agents.

Agents arrested Cholak and he agreed to call Shevgert to discuss the conspiracy. During their first conversation, Shevgert told Cholak to flee the United States and promised to pay Cholak $20,000. Shevgert urged Cholak to "hold out" because "without [him]" the police would "have nothing." Shevgert stated that the police would "pressure" him, but all the evidence linking him to the attacks was "indirect" and "[i]n the worse possible case," he would receive "10 to

4

15 years . . . and then [he would] get out after five." Shevgert stated that, by the time he was released from prison, Grigori would "kick the bucket" and Shevgert would inherit Grigori's fortune. During the second conversation, Shevgert agreed to meet Cholak in person. At that meeting, Agent Lynn Billings arrested Shevgert.

Shevgert later waived his constitutional rights and provided a statement to Agent Billings. Shevgert denied involvement in the attacks. Shevgert stated that he knew "some things" and blamed Cholak for the attacks.

Shevgert and his cohorts were indicted for their crimes. Shevgert and Vardanyan were charged in a three-count indictment for conspiracy and two counts of aiding and abetting in the assaults on the Komissarchuks. 18 U.S.C. §§ 2, 2261A. Vardanyan pleaded guilty to the three charges and was sentenced to 240 months of imprisonment. See United States v. Vardanyan, 09-10977 (11th Cir. Nov. 27, 2009). Cholak pleaded guilty to traveling in interstate commerce with the intent to kill, injure, and harass another person and was sentenced to 41 months of imprisonment, and Zub pleaded guilty to conspiring to travel and was sentenced to 30 months of imprisonment.

At trial, the Komissarchuks, Cholak, and Zub testified against Shevgert. The Komissarchuks testified about their wealth, Shevgert's hostilility, his demands for money, and the attacks. Cholak and Zub testified about their conversations with

5

Shevgert and their participation in the attacks on the Komissarchuks. Cholak stated that he was introduced to Vardanyan by Boris Parris and Parris was present when Vardanyan first agreed to attack the Komissarchuks. Cholak also stated that Shevgert was frustrated because the Komissarchuks endured the attacks. The government also introduced records that verified testimony about the travel of Shevgert's cohorts and telephone conversations in which the conspirators planned the attacks on the Komissarchuks.

The government called two other witnesses, Sergei Smirnov and Alexandr Leyvi, to testify about Shevgert's plans to harm the Komissarchuks. Smirnov and Leyvi testified that they met with Shevgert twice during which he asked for assistance in collecting a debt in New York. At the second meeting, Shevgert said that the people were elderly, he needed to "somehow influence [the] people and make them return the money," and he wanted "to beat them up a little bit." Smirnov testified that he refused to aid Shevgert.

Shevgert testified and denied any involvement in the attacks. Shevgert asserted that he first learned about Cholak and Zub's involvement after the third attack. Shevgert stated that Cholak wanted to start a business with Shevgert, Cholak had attacked the Komissarchuks to persuade them to give Shevgert money for that enterprise and, when that failed, Cholak tried to blackmail Shevgert.

6

Shevgert denied talking to Smirnov or Leyvi, and Shevgert said that he had encouraged Cholak to leave the country to end his extortion.

Shevgert also presented other evidence in his defense. Shevgert's wife testified that she believed Shevgert was innocent and the attacks stemmed from either an investigation about Grigori committing Medicare fraud, his disagreement with a contractor, or family problems with the Italian mafia. Shevgert also introduced testimony from two expert witnesses who challenged the quality, authenticity, and translation of tape recorded conversations between Shevgert and members of the conspiracy.

Shevgert moved for a judgment of acquittal, which the district court denied. The jury found Shevgert guilty of conspiring to travel in interstate commerce with the intent to kill, injure, and harass the Komissarchuks and of twice aiding and abetting in interstate travel in September 2006 and April 2007. 18 U.S.C. §§ 2, 2261A. The jury also returned a special verdict finding that the aiding and abetting crimes involved bodily injury that threatened the lives of the Komissarchuks.

A presentence investigation report separated Shevgert's conduct into four groups. Group One involved the aggravated assault of Grigori outside Home Depot and was assigned a base offense level of 14, United States Sentencing

Guideline § 2A2.2(a) (Nov. 2008), and increased that level by 7 points because Grigori sustained injuries that were permanent or life-threatening, id. § 2A2.2(b)(3)(C), by 2 points because Shevgert committed the assault for money, id. § 2A2.2(b)(4), by 4 points because of his role as organizer or leader, id. § 3B1.1(a), and by 2 points for his obstruction of justice for testifying falsely at trial, id. § 3C1.1.  Groups Two, Three, and Four involved the aggravated assaults of the Komissarchuks in the garage of their Florida home and of Galina outside the New Jersey home.  The three groups were assigned base levels of 14, id. § 2A2.2(a), which were increased by 4 points because a dangerous weapon was used in the assaults, id. § 2A2.2(b)(2)(B), by 6 points because the Komissarchuks sustained injuries that were serious and could have been permanent or life-threatening, id. § 2A2.2(b)(3)(E), and by 8 points because Shevgert was motivated by money, id. § 2A2.2(b)(4), he served as the organizer or leader, id. § 3B1.1(a), and he obstructed justice, id. § 3C1.1.  With a combined offense level of 36 and a criminal history of I, the report provided a guideline range between 188 and 235 months of imprisonment.  The report stated that Shevgert faced maximum statutory sentences of 60 months of imprisonment for conspiracy, 18 U.S.C. § 371, and 240 months of imprisonment for aiding and abetting, id. § 2261(b)(2).

Shevgert objected to the presentence report on three grounds.  First,

8

Shevgert argued that the report contained an inaccurate description of his offenses. Second, Shevgert argued that he should have received an increase of 2 points instead of 4 points for his aggravating role because the crimes involved less than five participants. Third, Shevgert argued that he did not obstruct justice because he "believe[d] that he told the truth" at trial.

At the sentencing hearing, the district court rejected Shevgert's objections. The district court found that the description of Shevgert's offenses was accurate. The government introduced testimony from Agent Billings about the involvement of Stofman and Parris in the conspiracy, and the district court found that there were five or more participants in the crime. The district court also found that Shevgert had obstructed justice by committing perjury.

The government requested that the district court vary upward from the guideline range and sentence Shevgert to 360 months of imprisonment. Shevgert argued that his crimes should have been divided into two instead of four groups, and the district court overruled the objection. Shevgert also requested that the district court vary downward eight to ten years because his convictions were based on "misunderstanding[s]," the guidelines had taken account of the nature and circumstances of his crimes, Cholak had received a sentence of 41 months of imprisonment, a lengthy sentence would be "horrible" at Shevgert's age, and he

9

was not personally involved in the attacks.

The district court granted the request by the government for an upward variance and sentenced Shevgert to 60 months of imprisonment for his conviction for conspiracy to run consecutively to two concurrent terms of 240 months of imprisonment for aiding and abetting in the attacks. The district court stated that Shevgert "orchestrated" repeated attacks on the Komissarchuks, which were "cold," "calculated," and "vicious," and "more despicable in nature and circumstances than any case" in which the court had presided and "indicate[d] [that Shevgert had] a depraved mind without regard for human life." The district court also stated that Shevgert had expressed no remorse for his crimes.

## II. STANDARDS OF REVIEW

We apply four standards of review in this appeal. We review de novo challenges to the sufficiency of the evidence and view the evidence in the light most favorable to the government. United States v. Bacon, No. 08-10463, slip op. at 3 (11th Cir. Mar. 4, 2010). We review evidentiary rulings for an abuse of discretion. United States v. Frank, No. 07-13685, slip op. at 34 (11th Cir. Mar. 15, 2010). We review de novo the application of the sentencing guidelines and examine related findings of fact for clear error. United States v. Faris, 583 F.3d 756, 759 (11th Cir. 2009). Objections or arguments that are not raised in the

10

district court are reviewed for plain error. <u>Frank</u>, slip op. at 28–29. We review the final sentence imposed by the district court for reasonableness, which is a deferential standard of review for an abuse of discretion. <u>United States v. Shaw</u>, 560 F.3d 1230, 1237 (11th Cir. 2009).

### III. DISCUSSION

Shevgert presents six issues for our consideration. All fail. We address each in turn.

*A. There is Sufficient Evidence To Support Shevgert's Convictions.*

Shevgert argues that the evidence introduced at trial was circumstantial, "inconclusive, inconsistent, and untrustworthy," but we disagree. Smirnov and Leyvi testified that Shevgert desired to hire someone to assault his in-laws, and Cholak and Zub described their conversations with Shevgert to plan and execute the attacks on the Komissarchuks. A reasonable jury could infer from the testimonies of Shevgert's cohorts and corroborating evidence, including recorded conversations between Shevgert and Cholak, that Shevgert had conspired with the cohorts and aided and abetted in the attacks. The jury disbelieved Shevgert's testimony and was entitled to consider his testimony as substantive evidence of his guilt. <u>Bacon</u>, slip op. at 4. The government presented ample evidence for the jury to find Shevgert guilty.

11

*B. Shevgert Has Abandoned His Challenge To Evidentiary Rulings of the District Court.*

Shevgert argues that the district court erred by "permit[ting] the government to introduce inadmissible, prejudicial and irrelevant" evidence of photographs, hearsay testimony, and tape recordings, and the government responds that he has abandoned these arguments. Rule of Appellate Procedure 28(a)(9)(A) requires an appellant to include in his argument his "contentions and reasons for them, with citations to the authorities and parts of the record on which [he] relies." Shevgert recounts the events at trial preceding the evidentiary rulings, but he fails to cite any caselaw or provide any legal argument to establish the district court erred in its rulings. Because Shevgert neglected to provide any meaningful discussion to support his arguments, we consider them abandoned. See Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.").

*C. Shevgert Also Has Abandoned His Argument Regarding a Mistrial.*

Shevgert argues for the first time on appeal that he was entitled to a mistrial based on cumulative error, but we agree with the government that Shevgert has abandoned his argument. Unless the defendant can establish the existence of individual errors, "no cumulative errors can exist." United States v. Waldon, 363

12

F.3d 1103, 1110 (11th Cir. 2004). Shevgert identifies five errors presumably committed by the district court, but he provides no legal analysis to support his claims of error. In the absence of substantive argument to establish some individual error occurred, Shevgert's argument of cumulative error is abandoned. See Singh, 561 F.3d at 1278.

*D. We Decline To Consider Shevgert's Argument About Ineffectiveness of Counsel.*

Shevgert argues for the first time on appeal that his counsel was ineffective at trial, but we will not consider this argument. Although Shevgert identifies several supposed errors by trial counsel, the district court should be given the first opportunity to address those allegations of ineffectiveness. See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). Shevgert can present his argument in a postconviction motion. 28 U.S.C. § 2255.

*E. The District Court Did Not Err in Enhancing Shevgert's Sentence Based on His Leading Role in the Attacks on the Komissarchuks.*

Shevgert challenges the enhancement of his sentence on several grounds, all of which fail. First, Shevgert argues for the first time on appeal that an enhancement of his sentence with facts not found by a jury violates his rights under the Fifth and Sixth Amendments, but "a district court may enhance a sentence based upon judicial fact-finding provided that its findings do not increase the sentence beyond the statutory maximum authorized by facts determined in a . . .

13

jury verdict." United States v. Dean, 487 F.3d 840, 854 (11th Cir. 2007). Second, Shevgert argues that his presentence investigation report contained incorrect facts and the evidence did not establish that the conspiracy involved five or more participants, but the court could rely on the evidence presented at trial, the findings of the jury, and testimony presented during the sentencing hearing to determine the accuracy of the report and the appropriateness of the enhancements. See United States v. De Varon, 175 F.3d 930, 945 (11th Cir. 1999); United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989). Third, Shevgert argues that his offenses should have been scored as two groups involving the harms to Grigori and Galina instead of four groups that addressed each attack, but the Sentencing Guidelines prohibit the "grouping of offenses that cannot be considered to represent essentially one composite harm." U.S.S.G. § 3D1.2 cmt. n.4. Fourth, Shevgert argues that the evidence did not support an enhancement for obstruction of justice, but the district court did not clearly err by finding that Shevgert committed perjury. See id. § 3C1.1 cmt. n.4(b); United States v. Ellisor, 522 F.3d 1255, 1276–77 (11th Cir. 2008).

F. Shevgert's Sentence is Reasonable.

The district court did not abuse its discretion by imposing the maximum statutory sentences. The district court considered the sentencing factors and

14

reasonably determined that an upward variance was necessary to punish Shevgert for the "depraved" and "vicious" nature of the attacks on his in-laws, the substantial harms they suffered, and Shevgert's lack of remorse. See 18 U.S.C. § 3553(a). We will not disturb a sentence unless "'we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quoting United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008)). Given the brutality and callousness exhibited by Shevgert and the avarice that motivated him, Shevgert's sentence of 300 months of imprisonment is reasonable.

## IV. CONCLUSION

Shevgert's convictions and sentences are **AFFIRMED**.

15