[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12266

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00089-CR-J-32-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILTON JOSEPH FONTENOT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 13, 2010)

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

Wilton Fontenot appeals his conviction under 18 U.S.C. § 1519 for making a false entry in a document with the intent to impede an investigation within the jurisdiction of a United States agency. Fontenot claims that, to convict under § 1519, the Government must prove he knew the investigation would be a federal investigation. Finding this claim without merit under plain error review, we affirm Fontenot's conviction.

## I.

This appeal stems from an altercation between a corrections officer, Sergeant Wilton Joseph Fontenot, and a prison inmate, Corey Milledge, at Florida's Union Correctional Facility on November 22, 2003. The altercation occurred when Fontenot and his subordinate, Officer Clyde Daniel, tried to enter inmate Milledge's cell to perform an inspection. After the altercation, Fontenot wrote a use of force report, which indicated that he followed Florida Department of Corrections procedures and that Milledge attacked him through the feeding slot in his cell door. Officer Joni White, who was stationed in the control room where she could see some of the events unfold on surveillance cameras, reported details that differed from Fontenot's account. Daniel, who had accompanied Fontenot to Milledge's cell, wrote a use of force report that matched Fontenot's, but he later

told an investigator that he had falsified his report at Fontenot's request. According to Daniel's later account, Fontenot entered Milledge's cell in violation of department procedures and initiated the altercation by punching Milledge in the head. The altercation ended when Fontenot choked Milledge into unconsciousness with a plastic trash bag.

Approximately three years later, Fontenot was charged with several federal offenses relating to the altercation, including one count of violating 18 U.S.C. § 1519 by knowingly making false entries in a report with the intent to obstruct an investigation within the jurisdiction of a federal agency.[1] Section 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

At trial, Fontenot testified, contrary to his use of force report, that he had entered Milledge's cell in violation of department procedures but that Milledge had initiated the altercation by attacking Fontenot and Daniel. Fontenot claimed he had falsified his use of force report in an attempt to insulate White and Daniel—who

---

[1] This was the third of three counts on which Fontenot was indicted. The first count charged Fontenot with violating 18 U.S.C. § 242, and the second count charged him with violating 18 U.S.C. § 1512(b)(3). The jury acquitted Fontenot on counts one and two.

were both junior to him and on probationary status—from severe disciplinary repercussions that would have resulted from violating department procedures.

After closing arguments, the district court instructed the jury, regarding the § 1519 violation, that

> [t]he government is not required to prove that the defendant knew his conduct would obstruct a federal investigation, or that a federal investigation would take place, or that he knew of the limits of federal jurisdiction. However, the government is required to prove that the investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a matter within the jurisdiction of an agency of the United States.

Fontenot did not object to this instruction, nor did he move the court for a judgment of acquittal on this point. The jury returned a guilty verdict on the § 1519 count, and the court sentenced Fontenot to fifteen months' imprisonment.

## II.

### A.

Fontenot appeals his conviction, arguing that to obtain a conviction under 18 U.S.C. § 1519, the Government had to prove that the defendant knew that the report would be part of a federal investigation. Because the Government offered no evidence that Fontenot knew a federal investigation would follow the altercation, he argues, there was insufficient evidence to convict him.

Fontenot is actually challenging the court's § 1519 jury instruction under the guise of an insufficient evidence claim: he argues that the Government was required to and failed to offer evidence that he knew he would be obstructing a federal investigation, but the court instructed the jury that the Government need only prove that the investigation he intended to impede "did, in fact, concern a matter within the jurisdiction of an agency of the United States." Fontenot's argument, in essence, is that there was insufficient evidence to convict him under the jury instruction that the court should have given. Because Fontenot did not object to the court's instruction, our review is limited to plain error. United States v. Mitchell, 146 F.3d 1338, 1342 (11th Cir. 1998).

To reverse under the plain error standard, there must be (1) error, (2) that is plain, and (3) that affects the appellant's substantial rights. United States v. Evans, 478 F.3d 1332, 1338 (11th Cir. 2007). If these conditions are satisfied, we have discretion to recognize forfeited errors that seriously "'affect[] the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam)). An error is plain when it "is 'obvious' and is 'clear under current law.'" United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999) (quoting United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993)). "It is the law

5

of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

B.

Fontenot's argument fails because it is not clear under current law that § 1519 requires that the defendant know that the investigation will fall within the jurisdiction of the federal government. To begin with, the text of the statute does not clearly compel this interpretation. See United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself."). In relevant part, § 1519 prohibits falsifying documents "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." (emphasis added). The plain statutory language does not compel Fontenot's desired interpretation; it is at least plausible to read the second clause as a simple jurisdictional element that operates independently of the defendant's intent or knowledge.[2]

---

[2] We make no holding regarding the actual requirements of the statute. For our purposes, it is sufficient to observe that the statutory language is not so clear as to allow reversal for plain error in the jury instructions.

Moreover, the little legislative history addressing this clause does not clearly resolve the issue in Fontenot's favor. See DBB, Inc., 180 F.3d at 1281 (explaining that a court will look at legislative intent when the plain meaning is ambiguous). Senator Leahy, for example, submitted a report suggesting the opposite interpretation:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation.

S. Rep. No. 107-146, at 14 (2002).

Lastly, the United States Supreme Court has not addressed this statute, and this circuit has only published two cases interpreting § 1519, neither of which addresses the issue Fontenot raises. In United States v. Hunt, 526 F.3d 739 (11th Cir. 2008), a panel of this court upheld a § 1519 conviction against a challenge that the statute did not give fair warning that it would apply to Hunt's conduct as required by the Due Process Clause of the Fifth Amendment.[3] Id. at 741. Hunt, a police officer, had falsified a police report to cover up the use of excessive force

_____

[3] The other published case, United States v. Hoffman-Vaile, 568 F.3d 1335 (11th Cir. 2009), does not address whether knowledge of federal jurisdiction is required at all. It holds (in relevant part) that federal grand jury subpoenas fall under § 1519 because they are issued "'in relation to or contemplation of' any matter 'within the jurisdiction of any department or agency of the United States[.]'" Id. at 1343 (quoting 18 U.S.C. § 1519) (alteration in original).

during an arrest and was later investigated by the FBI. Id. at 742. He argued that § 1519, which was passed as part of the Sarbanes-Oxley Act, was targeted at corporate fraud, not conduct like his. Id. at 744. The Hunt court held that the statute did give fair warning that it applied to Hunt's conduct because a "person of ordinary intelligence would understand a police report to be a 'record' or 'document'" under the statute and would understand an FBI investigation to be a "'matter within the jurisdiction of [a] department . . . of the United States.'" Id. at 743 (quoting 18 U.S.C. § 1519) (alteration in the original). Hunt also challenged the sufficiency of the evidence used to convict him, claiming the prosecution never offered evidence of his intent. The court reviewed the circumstantial evidence presented, including Hunt's own testimony and evidence that Hunt knew the FBI investigated claims of excessive force, and concluded that sufficient evidence did exist to support the conviction. Id. at 745.

Importantly, Hunt did not address whether § 1519 requires knowledge that the investigation falls under federal jurisdiction. Hunt's knowledge that the FBI could investigate his conduct was relevant because it was used circumstantially to establish Hunt's intent to impede an investigation. The Hunt court never held that knowledge of federal jurisdiction was an element of the offense; Hunt's knowledge

8

was merely sufficient in that case to prove intent.[4] There is thus no circuit law that clearly requires the government to prove that a defendant knows the investigation falls under federal jurisdiction as Fontenot argues.

## III.

Because it is not clear under current law that the Government had to prove that Fontenot knew his conduct could be subject to a federal investigation, the district court's instruction to the contrary was not plain error.[5] Fontenot's conviction is therefore

AFFIRMED.

---

[4] In his brief, Fontenot cites the following passage from Hunt to support his position: "Adequate circumstantial evidence exists to support the jury's conclusion. The Government put forth evidence Hunt knew claims of excessive force would be investigated by the FBI . . . ." United States v. Hunt, 526 F.3d 739, 745 (11th Cir. 2008). When read in context, this passage is equivocal. The court was responding to Hunt's argument that there was insufficient evidence to prove he intended to obstruct the investigation because in his view the evidence showed that he simply made a misstatement in his report. The court mentioned the FBI merely because that was the law enforcement agency that had in fact investigated Hunt and because there was evidence that Hunt had anticipated that investigation. Indeed, in addressing Hunt's due process challenge earlier in its opinion, the Hunt court wrote, "[w]e hold § 1519's plain language placed Hunt on notice that his action of knowingly making a false statement about the circumstances of Woodard's arrest with the intent to impede an FBI investigation was conduct sufficiently proscribed by § 1519." Id. at 744. This passage establishes only that intent to impede an FBI investigation is sufficient to trigger § 1519—it does not make it clear that such intent is required.

[5] Fontenot seems to argue in the alternative that there was insufficient evidence to convict him under the jury instructions as given. This argument lacks merit. Fontenot testified that he knowingly included false information in his use of force report and that he did so to impede an investigation. An FBI agent testified about her FBI investigation into the altercation between Fontenot and Milledge, from which a jury could infer that the investigation fell within the jurisdiction of a federal agency or department.

9

BARKETT, Circuit Judge, specially concurring:

I agree that we need not reach the merits in this case (as Mr. Fontenot has not met his burden on plain error review), but I believe that the following additional excerpts from the legislative history are illuminating.

Chairman John Conyers, in introducing the legislation and reading from the section-by-section analysis of the bill, noted that § 1519 created a new "felony which could be effectively used in a wide array of cases where a person destroys or creates evidence with the specific intent to obstruct a federal agency or a criminal investigation." 148 Cong. Rec. E463-01, E463 (daily ed. Apr. 9, 2002) (statement of Rep. John Conyers, Jr.).

Section 1519's expansive scope is reaffirmed by Senator Leahy's remarks when introducing the bill he co-sponsored. Senator Leahy elaborated that for prosecutions brought under § 1519, "[t]here would be no technical requirement that a judicial proceeding was already underway or that the documents were formally under subpoena." 148 Cong. Rec. S1783-01, S1786 (daily ed. Mar. 12, 2002) (statement of Sen. Leahy). Months later, Senator Leahy quoted a portion of the section-by-section analysis of the bill to explain that while other statutes "such as 18 U.S.C. § 1503, ha[d] been narrowly interpreted by courts, including the Supreme Court in United States v. [Aguilar], 115 S. Ct. 593 (1995), to apply only to

10

situations where the obstruction of justice can be closely tied to a pending judicial proceeding," § 1519 was intended to "apply broadly" to remove these "technical requirement[s], which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter by intent or otherwise." Id. at S7419. Senator Leahy further quoted the section-by-section analysis to emphasize that:

> The fact that a matter is within the jurisdiction of a federal agency is intended to be a jurisdictional matter, and not in any way linked to the intent of the defendant.

> Id.