[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 16-16751 & 17-13880

_____

D.C. Docket No. 1:16-cr-20257-DMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIE WILCHER,
a.k.a. Pee Wee,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 30, 2018)

Before MARCUS and WILSON, Circuit Judges, and HOWARD,[*] District Judge.

PER CURIAM:

These two consolidated appeals arising from the same criminal prosecution raise two distinct issues: (1) whether there was sufficient evidence supporting the defendant's conviction for the possession of ammunition and (2) whether the district court reversibly erred in correcting the transcript to reflect that all jurors said "yes" when polled after delivering their verdict. After a thorough review of the briefs and the record, and with the benefit of oral argument, we affirm on both issues.

I.

In late 2015, defendant Willie Wilcher, known as "Pee Wee," entered a convenience store in Miami carrying a rifle. He walked around the store and yelled various threats. He then exited and drove away in a gray Nissan Altima. A few minutes later, police officers, 911 callers, and the city's Shot Spotter system heard gunfire from a high-powered weapon. Upon arriving at the scene, officers saw a crashed gray Nissan Altima riddled with large bullet holes with spent shell casings inside of it. The officers also found a blue iPhone (bearing Wilcher's fingerprint) in the passenger compartment, sitting next to additional spent shell casings. They did not recover the rifle or any live ammunition.

---

[*] Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

2

A few days later, police obtained an arrest warrant and arrested Wilcher. During post-*Miranda* questioning, Wilcher admitted to shooting the rifle, asserting that other people were shooting at him as well.

Wilcher was indicted in the Southern District of Florida under 18 U.S.C. §§ 922(g)(1) and 924 (e)(1), possession of ammunition by a convicted felon. After a three-day trial, during which Wilcher testified in his own defense, the jury began deliberations. The jury sent out several notes during its deliberations, most indicating that they were at a stalemate, with one juror "not willing to make a judgment on another person no matter how much evidence [was] provided." However, after several responses from the district court, and, eventually, an *Allen* charge, the jury sent a note indicating that they had reached a unanimous verdict.

The jury entered the courtroom. The district court asked the foreperson if the jury had reached a unanimous verdict, and he answered, "Yes, sir." The court then sua sponte ordered the courtroom deputy to read the verdict and then poll the jury. The deputy read the verdict, stating: "We, the jury, unanimously find the defendant, Willie Wilcher, as to the indictment guilty." The deputy then asked each juror, by juror number, if this was his or her verdict.

The official certified transcript indicates that jurors 1–6 said "yes," juror 7 said "no," and jurors 8–12 said "yes." Present in the courtroom at the time were two prosecuting attorneys, two defense attorneys, two case agents, the defendant,

3

the trial judge, and various court staff. There were no objections or reactions noted on the transcript. Instead, the district court thanked the jurors for their service, invited them to meet for a personal thanks after the conclusion of the trial, and dismissed them. The court then asked each side if it had anything else to discuss, and both parties answered in the negative.

After denying a motion for a new trial on unrelated issues, the district court held a sentencing hearing, at which it sentenced Wilcher to 360 months of imprisonment. Wilcher then filed his first appeal in our court, arguing insufficiency of the evidence. After briefing was completed on that appeal, however, Mr. Wilcher himself noticed that the transcript reflected that a juror responded "no" when polled. At this point, approximately nine months had elapsed since the jury poll.

Wilcher's attorney filed a motion to file a substitute brief so that he could raise the issue on appeal. The government did not oppose the motion, and we ordered it carried with the case. However, after listening to the recording of the proceeding and consulting with the trial AUSA, the government filed an unopposed motion to stay the appeal pending the district court's resolution of a Fed. R. App. P. 10(e) motion to correct the record. We granted the motion to stay.

Meanwhile, in the district court, the government filed a Rule 10(e) motion to correct the record, asking the court to change juror 7's "no" to a "yes." Wilcher

responded, agreeing that corrections needed to be made, and requesting an evidentiary hearing. The district court held a telephonic status conference, at which it decided to hold an evidentiary hearing and to order the court reporter and jurors 6 and 7 to appear. During this conference, Wilcher's attorney agreed that the jurors should be called as witnesses, and he also agreed that the district court could state its recollection of the poll on the record. However, after the conference, Wilcher's attorney filed a motion to quash and a motion in limine, reversing course and asking the district court to preclude the recall of the jurors and objecting to the district court relying on its recollection of the jury polling. The district court denied both.

By this point, it had become clear, from listening to the court reporter's audio recording, that the transcript (which stated that juror 6 said "yes" and juror 7 said "no") was certainly wrong in one respect: juror 7 clearly stated "yes." However, juror 6 gave a muddled answer, which could be a "no," or could be indecipherable. Additionally, the district court had instructed juror 12 to answer out loud, and the transcript did not reflect this.

At the evidentiary hearing, the jurors testified first, and were examined only by the district court. Both juror 6 and juror 7 (who was the foreperson) testified that they had answered "yes." Juror 7 further testified that he did not hear anyone say "no." The courtroom deputy then testified and related that each juror had

5

responded "yes." Next, the court reporter from the date in question testified. She had been a court reporter for 24 years, and had certified "hundreds if not thousands" of transcripts in that time. She had been contacted about mistakes four times, and no mistakes related to the polling of a jury.

The court reporter's stenographic notes were taken into evidence. Apparently, she had taken these notes on her steno machine, and then had delivered them to a scopist, who translated them into English for the transcript. The transcript was then delivered back to the court reporter, who certified it. The steno notes differ from the transcript in the following relevant ways:

> (1)    The steno notes indicate that juror 6 said "no," while the transcript indicates that juror 6 said "yes."
> (2)    The steno notes omit jurors 7 and 8,[1] while the transcript indicates that juror 7 said "no" and juror 8 said "yes."
> (3)    The steno notes indicate that the district court stated "Ma'am, you need to answer out loud" to juror 12, while the transcript does not.

Additionally, below the word "no" in the steno notes is written "N-O-A-T" seven times, which is a notation that the court reporter made to herself "when something happens that is not normal," i.e., a note to herself to tell her "that the 'no' [she] wrote was not an error." The court reporter's audio recording was also admitted into evidence, which, as noted above, reflects a muddled answer or a "no" from juror 6 and a "yes" from juror 7.

---

[1] The steno notes have one "yes" between Juror 6's "no" and "Juror 9," but they do not have "Juror 7" or "Juror 8."

6

Finally, the trial AUSA and federal defender testified. The AUSA stated that she remembered each juror saying "yes," while the defender only heard a few jurors' answers because she was talking to her client and was thinking about his appeal.

After Wilcher cross-moved for correction of the record, the district court entered its order. The district court first ordered that juror 7's answer be changed to a "yes," since all witnesses and the audio recording agreed on that fact. Similarly, it ordered that its instruction to juror 12 be added.

As to juror 6, the district court ordered that her answer remain at a "yes" in the official transcript. The court gave the following reasons for this:

(1) Foreperson juror 7's testimony that he did not hear a "no" was credible, and he repeatedly informed the court that the verdict was unanimous.
(2) Juror 6's testimony that she said "yes" was credible.
(3) The trial AUSA and federal defender's testimony that they did not hear any juror say "no" was credible.
(4) The court reporter's explanation—or lack thereof—for the differences between the steno notes and the transcript was not credible, and she could not testify whether she had reviewed the transcript after receiving it from the scopist before certifying it. Therefore, the district court gave "little weight to her testimony that she heard Juror 6 respond 'no' during the poll."
(5) The failure of any attorney, court employee, or the defendant to react to the purported "no" strongly suggests that all jurors answered "yes."
(6) The district court's instruction to juror 12 to answer out loud confirms that the court was paying attention during the poll.
(7) The district court's recollection was that it observed an affirmative response from each juror.
(8) The issue of a "no" was never raised after trial.

7

The district court entered its order accordingly, and Wilcher appealed. After additional briefing, we consolidated the two appeals.

## II.

We first address Wilcher's sufficiency of the evidence argument. He argues that, at trial, the government relied exclusively on the theory that he possessed spent shell casings. These spent shell casings, he posits, do not qualify as ammunition under federal law. He therefore argues that there was insufficient evidence to support his conviction.

## A.

We review preserved challenges to the sufficiency of the evidence de novo. *United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016) (per curiam). We consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). We affirm unless no reasonable construction of the evidence supports the jury's verdict. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam).

However, we review unpreserved sufficiency challenges only for plain error.[2] *Zitron*, 810 F.3d at 1260. Further, when "a defendant raises specific

---

[2] We find plain error if there is "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are satisfied, we may exercise discretion to correct the error if (4) the error seriously affects the fairness, integrity, or public

challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, we review his argument for plain error." *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016).

### B.

A convicted felon may not possess ammunition. 18 U.S.C. § 922(g)(1). Ammunition is defined as "ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A). To prove that the defendant committed an offense under § 922(g)(1), the government must show that: "(1) he or she knowingly possessed a firearm or ammunition, (2) he or she was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce." *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam).

### C.

Plain error review applies here. Wilcher made a specific objection to the sufficiency of the evidence in the district court when he stated: "[We] ask that the Court dismiss the case based on the evidence, the lack of eyewitness testimony and the lack of actual possession or any evidence that Mr. Wilcher possessed." This is a specific argument that there was insufficient evidence that Wilcher possessed

---

reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013).

something. But Wilcher failed to make a specific argument that what he possessed was <u>not ammunition</u>. Therefore, we review his new argument on appeal—that spent shell casings are not ammunition, and therefore there was insufficient evidence to convict—for plain error. *Baston*, 818 F.3d at 664.[3]

We cannot "affirm a criminal conviction based on a theory not contained in the indictment or not presented to the jury." *United States v. Ross*, 131 F.3d 970, 980 (11th Cir. 1997). But, unlike Wilcher, we see two trial theories in the record. First, the government tried to prove that Wilcher fired at least one round of ammunition, and he therefore necessarily possessed ammunition—the "live fire theory."[4]   Second, the government tried to prove that Wilcher possessed spent shell casings, which, it argued, qualify as "cartridge cases" under the statute—the "spent shell casing theory." Either theory seems to be permitted by the statute, as it criminalizes the possession of "<u>ammunition</u> or <u>cartridge cases</u>, primers, bullets, or propellant powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A)

---

[3] Wilcher never raised the argument that spent shell casings are not ammunition in the district court. Indeed, he affirmatively accepted the following jury instruction: "The government is not required to prove that the unlawfully possessed ammunition was operable." He does not challenge this jury instruction on appeal.

[4] Wilcher disputes that the government presented this theory to the jury, but we find sufficient indicia of it in the record. *See, e.g.*, Doc. 58 at 127 ("Government's 19C [a spent shell casing] <u>represents</u> a shot fired." (emphasis added)); *id.* at 128 ("Convicted felons in this country cannot . . . have ammunition. They cannot engage in shootouts on crowded streets of women and children."); *id.* at 130 ("You have testimony from Special Agent Ribas that 7.62 by 39 millimeter ammunition, the ammunition possessed in this case, is what comes with and is fired out of an AK47."); *id.* at 133 ("[H]e opened fire, recklessly, driving with one hand firing out of the car with a long rifle with the other, and as he did so, the bullets left those holes."); *id.* at 134 ("Shooting an AK. That ammunition was possessed by the defendant on December 29th, 2015.")

10

(emphasis added). Because we find that both theories were presented to the jury, we must evaluate each one for legal sufficiency. *See United States v. Elkins*, 885 F.2d 775, 782 (11th Cir. 1989).

There was sufficient evidence to convict under the live fire theory. At trial, the government introduced Wilcher's post-*Miranda* statement that he shot the rifle; transcripts of 911 calls describing the shooting; video from the store of Wilcher walking around with the rifle; and testimony from a police officer who had been on the scene to whom bystanders had stated "Pee Wee came over here and started shooting . . . for no reason." Considering the evidence in the light most favorable to the government, we find that there was sufficient evidence for a reasonable jury to conclude that Wilcher fired live rounds, and he therefore possessed ammunition.[5]

As to the spent shell casing theory, Wilcher argues that it was legally insufficient because spent shell casings are not ammunition. But he cites no cases for this proposition. We have held that an error "cannot meet the 'plain' requirement of the plain error rule if it is not clear under current law." *United States v. Frank*, 599 F.3d 1221, 1239 (11th Cir. 2010). Accordingly, "if the explicit language of the statute or rule does not specifically resolve the issue, and there is no precedent from this Court or the Supreme Court directly resolving it, there is no

---

[5] Although he does not press the argument on appeal, if Wilcher's objection at trial preserved a challenge to the live fire theory, he could be entitled to a de novo review on that theory only. But it makes no difference here, because given the strong evidence supporting the live fire theory, we would affirm a sufficiency of the evidence challenge under even a de novo standard of review.

11

plain error." *Id.* Given the absence of any clear law establishing that spent shell

casings are not ammunition for the purpose of 18 U.S.C. § 922(g)(1), we find that

Wilcher cannot show plain error.[6,7]

Because we find, under our standards of review, that there was sufficient

evidence to convict under either or both theories of guilt, we affirm.

## III.

Next, we turn to Wilcher's transcript arguments. He asserts that the district

court reversibly erred in changing all jurors' answers to "yes" in the transcript

because juror 6 said "no." Therefore, he argues, he is entitled to a mistrial.

## A.

A district court's correction of the record is "conclusive," absent "a showing

of intentional falsification or plain unreasonableness." *United States v. Mori*, 444

---

[6] Contrary to Wilcher's assertion, the explicit language of the statute does not specifically resolve the issue, or it at least does not specifically resolve it in Wilcher's favor. *Cf. United States v. Fontenot*, 611 F.3d 734, 737 (11th Cir. 2010) (finding that the explicit language of a statute did not specifically resolve an issue when it was "at least plausible" to read the statute in a way other than the defendant's "desired interpretation"). The statute includes "cartridge cases . . . designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A). It is at least plausible to read this as including spent shell casings, and, in any event, this language does not explicitly, on its face, specifically "*compel* [Wilcher's] desired interpretation"—that the "cartridge case" must be unspent. *Cf. Fontenot*, 611 F.3d at 737 (emphasis added); *see also Frank*, 599 F.3d at 1239. This is confirmed by Wilcher's numerous extra-record citations in his brief on the matter—he looks beyond caselaw and the language of the statute to resolve the issue in his favor. In short, Wilcher should have raised this issue in district court, because plain error review is fatal to his argument.

[7] We also hold that there was sufficient evidence for a reasonable jury to find that Wilcher possessed the spent shell casings.

12

F.2d 240, 246 (5th Cir. 1971);[8] *accord United States v. Cruz-Feliciano*, 786 F.3d 78, 91 (1st Cir. 2015); *United States v. Franklin*, 250 F.3d 653, 663 (8th Cir. 2001); *United States v. Hernandez*, 227 F.3d 686, 695 (6th Cir. 2000); *United States v. Zichettello*, 208 F.3d 72, 93 (2d Cir. 2000); *United States v. Garcia*, 997 F.2d 1273, 1278 (9th Cir. 1993); *United States v. Keskey*, 863 F.2d 474, 478 (7th Cir. 1988). We "accord great deference to a district court's credibility determinations," and "we will not reverse a district court's factual finding concerning credibility unless the finding is 'contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *United States v. Cavallo*, 790 F.3d 1202, 1227 (11th Cir. 2015).

## B.

A district court must, on a party's request, or may, on its own, poll the jurors "[a]fter a verdict is returned but before the jury is discharged." Fed. R. Crim. P. 31(d). "If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." *Id.*

A transcript certified by a court reporter "shall be deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b). However, when "any difference arises about whether the record truly discloses

---

[8] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit).

13

what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Fed. R. App. P. 10(e)(1). If anything material has been misstated in the record, the record may be corrected and a new record prepared by the district court, the court of appeals, or on stipulation of the parties. *Id*. 10(e)(2).

## C.

In this case, the district court performed a painstaking review of what happened during the jury poll. It took testimony from the jurors, the courtroom deputy, the attorneys, and the court reporter. It listened to the audio recording, analyzed the stenographic notes, and reviewed the transcript for various errors—including irrelevant clerical errors. In short, it amassed all of the information available to it, made credibility determinations, and accordingly corrected the record. This is exactly how Fed. R. App. P. 10(e) should operate.

We will not say that the district court intentionally falsified the corrected record or that its corrections were plainly unreasonable. We see no reason to override its credibility determinations—crediting the testimony of the jurors and the attorneys, and giving little weight to the testimony of the court reporter. This is especially the case because of the numerous errors identified in the final transcript—errors that the court reporter could not explain. Likewise, the court's decision to give great weight to the lack of any reaction of any sort to a purported

14

"no" answer is perfectly reasonable. The district judge was obviously paying attention during polling, as he verbally instructed juror 12 to answer out loud. It is reasonable to posit that he (among so many others present in the courtroom) would have reacted to a "no." And the lack of any post-trial activity reflecting a "no" answer further militates against the likelihood that it occurred.

The district court's extensive evidentiary hearing and thorough order correcting the record precludes a finding of intentional falsification or plain unreasonableness. That court reasonably found that the court reporter made several mistakes in her transcript, and we will not disturb this finding on appeal. Therefore, we affirm.[9]

## IV.

For the reasons stated, we affirm on both issues.

**AFFIRMED.**

---

[9] As to Wilcher's numerous other arguments on this issue—all relating to the fairness of the evidentiary hearing—we affirm. We also note that the district court was not even required to take evidence, as we have previously affirmed a record correction when the district court relied *exclusively* on its own recollection. *Mori*, 444 F.2d at 246.