[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-11929

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELIAS XAVIER ROSARIO TORRES,
VERONICA ESTEFANIA RODRIGUEZ PINUELA,

Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00363-KKM-UAM-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Codefendants Veronica Estafania Rodriguez Pinuela ("Pinuela") and Elias Xavier Rosario Torres ("Torres") appeal their respective drug- and firearm-related convictions following a traffic stop during which drugs, a gun, and ammunition were found in bags in the vehicle.

Pinuela argues that the district court erred in denying her motion to suppress the evidence seized from her vehicle on the basis that the officers lacked probable cause of a traffic violation when they stopped her.

Torres argues that the district court plainly erred in not instructing the jury that the government needed to prove that he knew the firearm he possessed had machine gun characteristics in order convict him of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

After careful review, we affirm the convictions of both Pinuela and Torres.

## I.    Background

In 2022, a grand jury charged Torres and Pinuela each with (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine and fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(B), (C), and 846 (Count One); (2) possession with

intent to distribute 500 grams or more of cocaine and fentanyl, in violation of 21 U.S.C. § 841(b)(1)(B), (C) (Count Two); and (3) possession of firearm (here, a machine gun) in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (B)(ii) (Count Three). Additionally, the grand jury charged Torres with possession of firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Four).

Prior to trial, Pinuela filed a motion to suppress the evidence, which had been seized during a traffic stop. She alleged the following facts in her motion. On the day of the traffic stop, she, her uncle, and Torres were driving to dinner. On the way, they stopped at a gas station because Torres needed to meet up with someone. Law enforcement was present at the gas station and recognized Torres from a prior investigation. They observed that Torres appeared to have a marijuana cigarette tucked behind his ear. After Torres met privately with another driver, Pinuela, her uncle, and Torres left the gas station and proceeded to head to the restaurant. Police followed the vehicle for 13 miles before observing Pinuela's SUV enter a "turn only lane" for a hotel and "then proceed straight through the emergency lane rather than turn." She then continued west and entered another turn only lane, turned, and entered the restaurant parking lot. Police approached her vehicle as she was parking, and observed Torres "actually smoking the possible mari[j]uana cigarette and officers could smell the odor of what they believed to be burning mari[j]uana." Torres claimed that he had a medical marijuana

card, but he was unable to produce it.  Torres was then handcuffed and detained.

After removing Torres from the vehicle, the police removed two bags from the passenger side floorboard, and Pinuela claimed that the bags were hers, and asked the officer why he was reaching into her car and taking things without her permission.  Drugs, a gun,[1] and ammunition were discovered in the bags.  Torres then started proclaiming Pinuela's innocence and contending that the bags and contents were his.

Pinuela argued that law enforcement lacked probable cause to stop her and to search the bags, noting that (1) officers followed her for 13 miles before any alleged traffic violation occurred, and she was never given a traffic ticket or warning for the alleged moving violation; and (2) it was not illegal under Florida law to smoke hemp, which smells the same as marijuana.

The government responded that the stop was lawful because officers had witnessed a non-criminal traffic violation.  Further, officers had probable cause to search the car based on their observations of Torres smoking and the smell of burnt marijuana.

---

[1] The gun was a Glock, but the government charged Torres with possessing a machine gun in furtherance of a drug-trafficking crime because the Glock had a chip that "cause[d] the trigger bar . . . to stay down" when fired, "which converted the firearm into a machine gun."  The machine gun characteristic increased the applicable penalty for the § 924(c) count from a mandatory-minimum consecutive term of 5 years' imprisonment to 30 years' imprisonment.  18 U.S.C. § 924(c)(1)(A)(i), (B)(ii).

The district court held a hearing on the motion to suppress. Officer Albis Maceo testified that, on the day in question, he was a member of the Strategic Enforcement Unit, looking for people with outstanding warrants and conducting surveillance in high crime areas in an unmarked car. Around 10 p.m., he observed a black BMW traveling westbound, pull into a gas station, slow down, then exit the gas station and head eastbound. Approximately 10 to 15 minutes later, he observed the same vehicle return to the gas station and pull into a parking space next to a Mercedes Benz. Using binoculars, Maceo observed a male exit the passenger side of the BMW, whom he knew to be Torres from a prior arrest warrant encounter, and an unknown female exit the driver's side.[2] Torres approached the Mercedes, and he and the driver of the Mercedes "went off to the side and conversated for 10, 15 minutes," while the female driver of the BMW spoke to another person in the Mercedes. Maceo observed that Torres had a blunt tucked behind his ear.

Eventually, Torres and the female returned to their vehicle and left the gas station, and Maceo decided to follow them. Maceo also radioed for additional assistance from other officers. As he was following the BMW for approximately 13 miles, Maceo observed the BMW enter a turn only lane for a hotel, but instead of turning, the vehicle "continue[d] pass[] the emergency stripe lane, through the shoulder" for approximately a block, and then entered another

_____

[2] Maceo explained that there was another male in the backseat, who was later identified as Pinuela's uncle.

turn only lane to make a right-hand turn onto another road and pull into a Bahama Breeze parking lot.[3]  Maceo explained that the vehicle's actions were in violation of Florida's traffic laws, and he decided to make a traffic stop.  Another officer who had joined in following the BMW, Sergeant Jenne, activated his lights and approached the BMW as it was parking.

As Maceo and Jenne approached the BMW, Maceo observed that Torres had the blunt in his hand, "saw a billow of smoke coming out of the window," and smelled the odor of burned marijuana.  Maceo seized the blunt and questioned Torres about it.  Torres claimed that he had a medical marijuana prescription, but officers investigated and confirmed that he did not.  Maceo explained that, even if Torres had a medical marijuana card, no one is permitted to smoke marijuana in a vehicle under Florida law.

On cross-examination, Maceo explained that while it was permissible for a car to stop in an emergency lane or on the shoulder for an emergency or if "you need to do something," a car could not drive in the emergency lane, and Pinuela never stopped in the emergency lane.  Maceo confirmed that there was no video of the alleged traffic violation, and he did not give Pinuela a ticket or written warning, but he claimed that she was given a verbal warning.  He confirmed that there is no documentation for verbal warnings.

---

[3] An aerial image depicting the highway and an image with an arrow documenting Pinuela's path of travel were admitted into evidence.

Sergeant Jenne confirmed the same details of the traffic violation as Maceo.  Jenne explained that it was safer for all parties involved to allow the vehicle to finish parking before initiating the stop.  As Jenne approached the BMW, he smelled marijuana and observed Torres actively smoking the blunt.  Based on his training and experience, Jenne also observed Torres "target gazing"[4] at some bags that were in the floorboard, which caused Jenne to be concerned that there could be a gun in the bags because he knew that Torres had been a wanted subject previously in a violent shooting.

Jenne explained that, after Maceo removed Torres from the car, Jenne observed Pinuela "lunge[], [and] reach[] over at the bag to grab it," and Jenne then quickly grabbed the bags and removed them from the car.  Jenne conducted "a protective sweep" of the bags to make sure there were no guns, and he discovered a "broken up kilo of cocaine," at which point Pinuela was also detained.

Following the officers' testimony, Pineula's counsel argued that there was no probable cause for the traffic stop because the officers did not provide a citation to any specific Florida law.  He asserted that "obviously, like a million people a million times," drive through a turn-only lane and the shoulder "for all sorts of reasons."  The trial court pointed out that counsel had not raised this argument in the motion to suppress, and it would need the

---

[4] Jenne explained that target gazing "is a subconscious behavior [of] people who are concerned about items in the presence of law enforcement, [where] they will just continue looking, [and] . . . looking."

8                       Opinion of the Court                    24-11929

government to recall the officer to provide a citation to Florida law and to more fully develop this argument.

The government recalled Officer Maceo who testified that Pineula's actions in driving through the emergency lane and the shoulder qualified as "fail[ure] to use designated lane," in violation of Florida Statute 316.089, particularly subsections 3 and 4. Maceo explained that those sections provided that:

> [o]fficial traffic control devices may be erected directing specified traffic to use a designated lane or a designation—or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of every such device.
>
> . . . [and] [o]fficial traffic control devices may be installed prohibiting the changing of lanes on sections of roadway and the drivers of vehicles shall obey the directions of every such device.

Pinuela's counsel argued that the statute did not cover Pinuela's conduct because there was "no [traffic control] device."[5] Maceo explained that "[t]he painted turn arrow on the lane is a control device. So [Pinuela] was in the turn only lane to turn into the Westin [hotel], which she did not obey by continuing past the turn

---

[5] The trial court questioned why counsel had not put this argument in his motion to suppress either and instead had "admitted . . . that your client did what [Officer Maceo] says." Counsel stated that he had "forgot" and had been trying to focus on other issues.

lane and going in through the emergency lane and then on the shoulder into the other turn lane." Pinuela's counsel maintained that a traffic control device was "a physical thing, like a stop sign, a traffic light, a yield sign, not . . . a line in the road."

Following the hearing, the district court denied the motion to suppress. First, the district court concluded that the officers had probable cause to believe a traffic violation had occurred, noting that Pinuela "concede[d] that she drove through a turn only lane into an emergency lane," but that even absent this concession, Officer Maceo's testimony was credible regarding Pinuela's conduct. The district court further concluded that "[t]he turn-only arrow painted on the highway and the lines designating an emergency lane both fit the definition of "markings" placed on the road 'for the purpose of regulating, warning, or guiding traffic,'" as specified under Florida law. (quoting Fla. Stat. § 316.003(50)). Thus, by failing to obey those markings, Pinuela committed a traffic infraction, which provided officers with probable cause to perform a traffic stop. Second, the district court concluded that the warrantless search of the vehicle was permissible under the automobile exception because officers had probable cause based on the odor of marijuana.

Pineula and Rodriguez proceeded to trial. As relevant to this appeal, the government and the defendants agreed upon, and jointly proposed, the jury instructions, which the district court adopted. The jury convicted Torres on all four counts as charged,

and it convicted Pinuela on Counts Two and Three only.[6]  This appeal followed.

## II.    Discussion

Pinuela argues that the district court erred in denying her motion to suppress because the officers lacked probable cause of a traffic violation when they stopped her.  As for Torres, he argues that the district court plainly erred in the jury instructions related to the § 924(c) conviction.  We address each argument in turn.

### A.  Pinuela's Motion to Suppress Claim

For the first time, Pinuela asserts that the government lacked probable cause of a traffic violation because it failed to present any evidence at the evidentiary hearing that the highway markings "were in proper position and sufficiently legible to be seen by an ordinary observant person," as required for the enforcement of Florida's traffic laws.[7]  We disagree and affirm.

The denial of a motion to suppress presents a mixed question of law and fact, and "[w]e review a district court's findings of fact for clear error, considering all the evidence in the light most favorable to the prevailing party—in this case, the Government." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (en banc).  "[W]e review *de novo* a district court's application of the law

---

[6] The jury acquitted Pinuela of the charge in Count 1.

[7] Pinuela does not challenge the district court's conclusion that the markings on the road qualified as traffic control devices.

24-11929                Opinion of the Court                11

to those facts."[8]  *Id.*  Importantly, "[t]he party moving to suppress evidence bears the burdens of proof and persuasion."  *United States v. Wilson*, 979 F.3d 889, 908 n.9 (11th Cir. 2020).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "A traffic stop is a seizure within the meaning of the Fourth Amendment."  *Campbell*, 26 F.4th at 880.

Although Pinuela and the district court focused on whether the officers had probable cause to believe a traffic violation occurred, in *Campbell*, we clarified that, consistent with Supreme Court precedent, officers need only reasonable suspicion for a traffic stop.  *Campbell*, 26 F.4th at 880 & n.15; *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014).  Probable cause is also "sufficient" but not required.  *Campbell*, 26 F.4th at 880 n.15.  Accordingly, we focus our analysis on whether the officers had at a minimum reasonable suspicion that a traffic violation had occurred.  *See Campbell*, 26 F.4th at 879 ("[W]e have discretion to affirm on any

---

[8] The government argues that because Pinuela did not present her theory about whether the highway markings were in the proper position and legible in the district court in support of her motion to suppress, we should review for plain error only.  *See United States v. Bruce*, 977 F.3d 1112, 1116 (11th Cir. 2020) ("We review for plain error any theories supporting a motion to suppress that were not raised below.").  Pinuela, on the other hand, argues that this theory was preserved based on her general challenge to the lack of probable cause for the stop.  We need not address whether Pinuela's probable cause challenge below was sufficient to preserve this new theory on appeal because we conclude that her claim fails even under *de novo* review.

ground supported by the law and the record that will not expand the relief granted below." (quotations omitted)).

To comply with the Fourth Amendment, "an officer making a stop must have a particularized and objective basis for suspecting the person stopped of criminal activity," and minor traffic violations qualify as such activity. *Campbell*, 26 F.4th at 880 (quotations omitted). "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Heien*, 574 U.S. at 61. "[R]easonable suspicion requires that the officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir. 2003) (quotations omitted)). "[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quotations omitted).

Under Florida law, "drivers shall obey the directions of" official traffic control devices, and these devices "may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction" and "may be installed prohibiting the changing of lanes on sections of roadway." Fla. Stat. § 316.089(3)–(4). A violation of this section results in a noncriminal traffic infraction. *Id*. § 316.089(5). Official traffic control devices include "[a]ll signs, signals, markings, and

devices . . . placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic." *Id.* § 316.003(50).

Viewing the evidence in the light most favorable to the government, we agree that the officers had reasonable suspicion to stop Pinuela for a traffic violation. We reach this conclusion based on the officers' knowledge of Florida law and their articulated observations of Pinuela entering a turn-only lane, failing to turn, and continuing straight through the emergency lane and the shoulder.[9] Those observations gave the officers the requisite reasonable suspicion to pull her over for a violation of Florida's traffic laws. *See id.* § 316.089(3)–(4); *see also Heien*, 574 U.S. at 61 ("Reasonable suspicion arises from the combination of the officer's understanding of the facts and his understanding of the relevant law.").

Relying on Fla. Stat. § 316.074,[10] Pinuela argues that in order to prove that the traffic stop was valid, the government had to produce evidence that the markings on the road were in the proper

---

[9] Indeed, we agree with the district court that the officers' observations of Pinuela's driving also established probable cause. *See Wilson*, 979 F.3d at 908 ("[T]he probable-cause standard is satisfied when a police officer witnesses a driver commit a traffic violation.").

[10] Florida Statute § 316.074 provides that "[n]o provision of [chapter 316] for which official traffic control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official device is not in proper position and sufficiently legible to be seen by an ordinarily observant person."

position and sufficiently visible to an ordinary person. Pinuela's claim fails. Whether or not the alleged traffic violation would have been ultimately enforceable against her has nothing to do with whether the officers had reasonable suspicion to believe that she had committed a traffic violation. It is well-established that reasonable suspicion "focuses on the information available to the officers at the time of the stop . . . not information that the officers might later discover (*i.e.*, later discovered issues with the markings on the road). *United States v. Lewis*, 674 F.3d 1298, 1305 (11th Cir. 2012) (quotations omitted). Indeed, seizures may still be reasonable under the Fourth Amendment even when based on a mistake of fact or law. *See Heien*, 574 U.S. at 61. And "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette*, 572 U.S. at 397 (quotations omitted). In other words, for reasonable suspicion to exist to perform a traffic stop in Florida for failure to obey traffic control devices, there is no requirement that the government show that the traffic control devices were actually in proper position and visible to the ordinary driver.

Furthermore, even assuming arguendo that the government needed to show that the road markings were properly placed and clearly legible to an ordinary driver, we conclude that the government satisfied that requirement by submitting aerial images of the road, which establish that the road markings were properly

placed and clearly visible.[11]   And even if the images were not sufficient to establish the proper placement and visibility of the markings, we cannot overlook that Pinuela admitted in her motion to suppress that she failed to obey the markings on the road.  Based on her concession in the motion to suppress, any argument that there was no basis for the officers to reasonably suspect that she had committed a traffic violation  is squarely foreclosed.

Accordingly, we conclude that the district court properly denied the motion to suppress.

### B.  Torres's Jury Instruction Claim

Torres argues for the first time on appeal that the jury should have been instructed that the government needed to prove that he knew that the firearm had the characteristics of a machinegun in order to find him guilty of possessing a firearm—in this case a machinegun—in relation to a drug-trafficking crime, in violation of § 924(c).

Because Torres did not raise this jury instruction challenge in the district court, his claim is subject to plain error review.  *See United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995).  "To establish plain error, a defendant must show there is (1) error,

---

[11] We note that Pinuela did not object to these images or otherwise challenge that they were accurate representations of the roadway at the time she traveled on it.  And "[t]he party moving to suppress evidence bears the burdens of proof and persuasion."  *Wilson*, 979 F.3d at 908 n.9.

(2) that is plain, and (3) that affects substantial rights." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). "If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

However, the doctrine of invited error applies when a defendant affirmatively requests or stipulates to a particular jury instruction. *See United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010) ("[Defendant] invited error when he not only agreed with the supplemental instructions and special verdict form, but requested them."). Thus, "when a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result." *Id.*; *see also United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021) ("Where a party invites error, the Court is precluded from reviewing that error on appeal." (quotations omitted)).

Here, Torres proposed and expressly agreed to the very jury instructions that he now challenges.[12] Thus, he invited any error

---

[12] Torres notes that "should there be an intervening change in law" concerning the *mens rea* element under § 924(c), the invited error doctrine . . . would not apply." *See United States v. Duldulao*, 87 F.4th 1239, 1255 (11th Cir. 2023) (recognizing an exception to the invited error doctrine "where the error invited by a party relied on settled law that changed while the case was on appeal"). However, no such change in the law regarding the *mens rea* requirements of § 924(c) has occurred while Torres's appeal was pending (and

and forfeited his right to challenge these instructions on appeal. *Frank*, 599 F.3d at 1240; *Maradiaga*, 987 F.3d at 1322 (explaining that a defendant "proposing the exact language that the district court adopted" is a "textbook case of invited error").

Accordingly, Torres is not entitled to relief on this claim.

### III.    Conclusion

For the above reasons, we affirm Pinuela's and Torres's convictions.

**AFFIRMED.**

---

Torres does not contend otherwise).  Therefore, the invited error doctrine applies here.